UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X
UNITED STATES OF AMERICA,

       -against-                <u>MEMORANDUM AND ORDER</u>
                                        06-CR-550 (S-1)(JS)

DAVID H. BROOKS, SANDRA HATFIELD,
and PATRICIA LENNEX,

                     Defendants.
----------------------------------X

APPEARANCES:

For Government:      James Halleron Knapp, Esq.
                      Richard Thomas Lunger, Jr., Esq.
                      Christopher Allen Ott, Esq.
                      James M. Miskiewicz, Esq.
                      United States Attorneys Office
                      610 Federal Plaza
                      Central Islip, NY 11722-4454

For Defendants:

David H. Brooks     James M. LaRossa, Esq.
                      240 West End Avenue
                      New York, NY 10023

                      William H. Murphy Jr., Esq.
                      Kenneth Ravenell, Esq.
                      The Murphy Firm
                      1 South Street, 23rd Floor
                      Baltimore, MD 21202

                      Richard Ware Levitt, Esq.
                      Yvonne Shivers, Esq.
                      Law Offices of Richard W. Levitt
                      148 East 78th Street
                      New York, NY 10021

Sandra Hatfield     Roland G. Riopelle, Esq.
                      Sercarz & Riopelle LLP
                      152 West 57th Street, 24th Floor
                      New York, NY 10019

Patricia Lennex     Michael F. Bachner, Esq.
                      Bachner & Herskovits, P.C.
                      26 Broadway, Suite 2310
                      New York, NY 10004

SEYBERT, District Judge:

Pending before the Court is Defendant David H. Brooks[1] ("Brooks") Motion to Dismiss Counts Three, Four, and Five of the Second Superseding Indictment ("Indictment") pursuant to Rule 12(b) of the Federal Rules of Criminal Procedure. For the reasons set forth below, Defendant's motion to dismiss is DENIED.

<u>BACKGROUND</u>

The full facts have been set forth in detail in the numerous pre-trial orders previously filed in this case. Briefly, on August 16, 2006, the Government indicted Sandra Hatfield ("Hatfield"), the former Chief Operating Officer of D.H.B. Industries, Inc. ("DHB") for conspiracy to commit securities fraud, substantive securities fraud, and insider trading. On October 24, 2007, the Government filed a Superseding Indictment against Hatfield and added Brooks, the founder and former Chief Executive Officer of DHB, as a co-defendant. Then, on July 10, 2009, the Government filed a Second Superseding Indictment that added Patricia Lennex as a defendant in this action.[2] The Indictment is immaterially changed with respect to Brooks. Both Brooks and Hatfield were charged with securities fraud, conspiracy-to-commit

_____

[1] Defendant Hatfield joins in this motion to dismiss. The Court's reasoning and decision applies to Hatfield as well as Brooks.

[2] Since Lennex is not involved in this motion, references to her are omitted for the remainder of this Memorandum and Order.

mail and wire fraud, mail fraud, wire fraud, conspiracy to obstruct justice, obstruction of justice, and conspiracy to impair, impede, obstruct, and defeat the Internal Revenue Service ("IRS"). The Indictment separately charges Hatfield with three counts of insider trading and one count of tax evasion, and charges Brooks with six counts of insider trading, one count of making material misstatements to auditors, and two counts of filing false tax returns.

In his motion, Brooks contends that the Indictment is defective because the facts alleged are beyond the scope of the relevant criminal statutes. (Def.'s Mem. in Supp. 8.) Specifically, Brooks argues that the honest-services fraud prosecution must fail because he does not fit within the requirements of United States v. Rybicki, 354 F.3d 124 (2d Cir. 2003) (en banc). Brooks argues that no "scheme or artifice to defraud DHB" was alleged because the Indictment only alleges a scheme against the shareholders and the investing public, not DHB itself. (Def.'s Mem. in Supp. 10, 13.) Brooks maintains that not only does the Indictment fail to allege a scheme against DHB, but it implicates DHB in the scheme to defraud the shareholders. (Id. at 13.) Alternatively, Brooks contends that if any claims regarding his overcompensation exist, they only allege civil breaches of contracts, and facts constituting a tort are required for honest-services fraud. (Id. at 14.) Brooks also asserts that

the honest-services fraud law will be drastically altered in the upcoming Supreme Court term because writs of certiorari have been granted in two honest-services fraud cases. (Def.'s Suppl. Mem. in Supp. 1-15.) In addition, Brooks argues that the Indictment is defective because it alleges Counts Three, Four, and Five in the conjunctive, rather than the disjunctive, as he alleges is required by the statute. (Def.'s Mem. in Supp. 11.) Moreover, Defendants argue that the dissemination of the 2004 DHB Proxy Statement ("Proxy Statement") was not in furtherance of the alleged scheme because the Proxy Statement did not defraud DHB. (Id. ¶¶ 16-23.) Brooks contends that if the Proxy Statement did defraud DHB, the alleged scheme was already complete, preventing the Proxy Statement from being "in furtherance of" the alleged scheme, thus depriving this Court of jurisdiction. (Id. ¶¶ 16-23.)

DISCUSSION

I. <u>Standard of Review</u>

    A. <u>Motion to Dismiss Standard</u>

A motion to dismiss an indictment must satisfy a "high standard." <u>United States v. Kerik</u>, 615 F. Supp. 2d 256, 262 (S.D.N.Y. 2009). "As long as the indictment meets the constitutional requirements mandated by the Fifth and Sixth Amendments, it is sufficient." <u>United States v. Lasky</u>, 967 F. Supp. 749, 751 (E.D.N.Y. 1997). "[T]he sufficiency of the evidence is not appropriately addressed on a pretrial motion to dismiss an

indictment." <u>United States v. Alfonso</u>, 143 F.3d 772, 777 (2d Cir. 1998); <u>see</u> <u>also</u> <u>United States v. Villanueva Madrid</u>, 302 F. Supp. 2d 187, 192 (S.D.N.Y. 2003) ("so long as an indictment count is facially valid, a trial court may not look beyond it to examine the sufficiency of the evidence supporting that count." (citing <u>Alfonso</u>, 143 F.3d at 776)). Therefore, the Court accepts the facts alleged in the indictment as true and determines only whether the indictment is "valid on its face." <u>Costello v. United States</u>, 350 U.S. 359, 363, 76 S. Ct. 406, 100 L. Ed. 397 (1956).

The Supreme Court of the United States has held that an indictment is sufficient if it: (1) "contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend," and (2) "enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." <u>Hamling v. United States</u>, 418 U.S. 87, 117-18, 94 S. Ct. 2887, 41 L. Ed. 2d 590 (1974) (internal citations omitted). Moreover, the Court held that "[i]t is generally sufficient that an indictment set forth the offense in the words of the statute itself, as long as 'those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offence intended to be punished.'" <u>Id.</u> (quoting <u>United States v. Carll</u>, 105 U.S. 611, 612, 15 Otto 611, 26 L. Ed. 1135 (1882)). And while "the language of the statute may be used in the general description of an

offence, [] it must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offence, coming under the general description, with which he is charged." Hamling, 418 U.S. at 117-18 (quoting United States v. Hess, 124 U.S. 483, 487, 8 S. Ct. 571, 31 L. Ed. 516 (1888)). Essentially, the indictment must meet the requirements of Rule 7(c)(1), which provides, in pertinent part, "[t]he indictment or information must be a plain, concise, and definite written statement of the essential facts constituting the offense charged . . . ." Fed. R. Crim. P. 7(c)(1); see also Lasky, 967 F. Supp. at 751.

B. Mail, Wire, and Honest-Services Fraud

The mail fraud statute, 18 U.S.C. § 1341, and the wire fraud statute, 18 U.S.C. § 1343, are treated in an identical manner. See United States v. Slevin, 106 F.3d 1086, 1088 (2d Cir. 1996) ("Because these statutes [18 U.S.C. § 1341 and § 1343] use the same relevant language, they are analyzed in the same way."). These statutes "prohibit the use of the mails or wires in furtherance of 'any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises.'" Id. (quoting 18 U.S.C. §§ 1341, 1343); see also United States v. Reifler, 446 F.3d 65, 95 (2d Cir. 2006) ("In interpreting § 1343, we look not only to cases decided under that section but also to cases involving 18 U.S.C. § 1341,

the mail fraud statute, as § 1341 uses the same relevant language in prohibiting the furtherance of fraudulent schemes by use of the mails.").

Three main elements constitute mail or wire fraud violations: (1) a scheme to defraud; (2) money, property, or honest services; and (3) use of the mails or wires in furtherance of the scheme. See <u>United States v. Wallach</u>, 935 F.2d 445, 461 (2d Cir. 1991) (providing the elements for mail fraud)[3]; <u>United States v. Bortnovsky</u>, 879 F.2d 30, 39 (2d Cir. 1989) (discussing Congress's actions in passing 18 U.S.C. § 1346). Also, the government must prove that defendants acted with intent. <u>Id.</u> ("To establish the existence of a scheme to defraud, the government must present proof that the defendants possessed a fraudulent intent."). No actual injury is required. <u>Id.</u> ("the government is not required to show that the intended victim was actually defrauded." (citations omitted)). It is only necessary that defendants "contemplated some actual harm or injury." <u>Id.</u>; <u>see</u> <u>also</u> <u>United States v. Gotti</u>, 459 F.3d 296, 331 (2d Cir. 2006) ("this Circuit has held that in wire fraud cases, it is the scheme itself, rather than its success, that is the required element for conviction."). Moreover, defendants do not have to personally dispatch the fraudulent information via the

---

[3] Because, as discussed, mail and wire fraud violations are analyzed in the same manner, the elements are identical. Only the means of transmitting the fraud—through the mails or via the wires—is different.

mails or wire. <u>Slevin</u>, 106 F.3d at 1089 ("The mailings do not need to be done by the defendant personally . . . ."). Instead, the government only has to prove "that the defendants 'caused' the mailing, namely that they must have acted 'with knowledge that the use of the mails will follow in the ordinary course of business, or where such use can reasonably be foreseen, even though not actually intended . . . .'" <u>Bortnovsky</u>, 879 F.2d at 36 (quoting <u>Pereira v. United States</u>, 347 U.S. 1, 8-9, 74 S. Ct. 358, 98 L. Ed. 435 (1954)); <u>see</u> <u>also</u> <u>Slevin</u>, 106 F.3d at 1089 (quoting <u>Bortnovsky</u> with approval). Additionally, the government must prove "that the mailing was for the purpose of executing the scheme or, in other words, 'incident to an essential part of the scheme.'" <u>Bortnovsky</u>, 879 F.2d at 36 (citing <u>Pereira</u>, 347 U.S. at 8-9); <u>see</u> <u>also</u> <u>Slevin</u>, 106 F.3d at 1089 (quoting <u>Bortnovsky</u> with approval).

There is no strict timing requirement for the mailing or wire; the mailing need not precede the fraud. <u>Slevin</u>, 106 F.3d at 1089. When there is a fraudulent pattern, even post-fraud mailings or wires can satisfy the "in furtherance of" requirement. <u>Slevin</u>, 106 F.3d at 1089-90 ("[w]here the frauds are not isolated or unrelated swindles, postfraud mailing[s] . . . may further the scheme by, for example, lulling the victims into believing they received the services fraudulently promised, or by helping to keep the scheme in operation by preserving a needed business relationship between a fraud victim and the defendant." (citations

omitted)).

In addition to money and property, a scheme to defraud
another of the "intangible right to honest services" violates the
mail and wire fraud statutes. 18 U.S.C. § 1346 (2009). Congress
passed the honest-services fraud statute, 18 U.S.C. § 1346, in
response to the Supreme Court's decision in <u>McNally v. United
States</u>.[4] <u>See Bortnovsky</u>, 879 F.2d at 39 ("Section 1346, adopted in
1988, ensures that mail fraud encompasses 'scheme[s] . . . to
deprive another of the intangible right of honest services' and
thereby overrules <u>McNally v. United States</u> . . . ."). As a result,
the mail and wire fraud statutes now prohibit a "scheme or artifice
to deprive another of the intangible right of honest services". 18
U.S.C. §§ 1341, 1343, and 1346 (2009); <u>Reifler</u>, 446 F.3d at 95 ("In
addition to encompassing schemes to obtain money and property, 'the
term "scheme or artifice to defraud" includes a scheme or artifice
to deprive another of the intangible right of honest services.'"
(quoting 18 U.S.C. § 1346)). Under § 1346, the focus is on the
scheme; the "'crime [is] to devise a <u>scheme</u> to deprive another of
the right of honest services' and this scheme to defraud is an
essential element of the crime." <u>United States v. Middlemiss</u>, 217
F.3d 112, 120 (2d Cir. 2000) (emphasis in original) (quoting <u>United
States v. Sancho</u>, 157 F.3d 918, 920 (2d Cir. 1998) (per curiam),
<u>cert.</u> <u>denied</u>, 525 U.S. 1162, 119 S. Ct. 1076, 143 L. Ed. 2d 79

_____

[4] 483 U.S. 350, 107 S. Ct. 2875, 97 L. Ed. 2d 292 (1987)

9

(1999)).

## II. The Indictment Adequately Alleges a Scheme or Artifice to Defraud

Brooks argues that the Government failed to allege a scheme or artifice to defraud. Defendants put forth several different arguments in support of this claim. Each argument is addressed individually in the following sections.

### A. The Government Properly Alleges a Fraudulent Scheme Against DHB

Brooks argues that the Government flip-flops between the identity of the targets of the alleged fraud. (Def.'s Mem. in Supp. 10-13.) At times, Brooks argues, the Government cites "the shareholders of DHB and the investing public" as the fraud's target. (Id.) But in the Mail and Wire Fraud Counts, he notes that the Government cites DHB itself as the victim. (Id.) And according to Brooks, the Indictment "fails to identify any scheme or artifice directed at DHB, or to affirmatively reference any fraudulent pretense, representation or promise made by Mr. Brooks to DHB with a view toward obtaining its money or property." (Id. at 13; see also Def.'s Reply, 4.) Brooks is incorrect.

The Government's response letter, which is quite sparse, simply points out that Brooks cites no caselaw to support his contention, and the Government's independent research discovered none. Rather, the Government only argues that fraud is criminalized "in connection with any security of an issuer with a

10

class of securities . . . ." (Id. (quoting 18 U.S.C. § 1348(1), (2).[5]) And since DHB is an issuer of securities, the Government argues that the Indictment sets forth the factual elements to support the fraud offenses. But Brooks's arguments concern different sections of Title 18 than the Government's response.

It is possible to commit fraud against a corporation itself. See, e.g., Cenco Inc. v. Seidman & Seidman, 686 F.2d 449, 456 (7th Cir. 1982) ("Fraud on behalf of a corporation is not the same thing as fraud against it."); In re Maxwell Newspapers, Inc., 164 B.R. 858, 869 (Bankr. S.D.N.Y. 1994) ("The fraud which the Maxwells committed was one against Maxwell Newspapers, not on its behalf.").[6] The Government has alleged that Brooks perpetrated his

_____

[5] 18 U.S.C. § 1348 is the securities-fraud statute. The securities fraud statute is guided by cases interpreting the mail and wire fraud statutes. See United States v. Mahaffy, No. 05-CR-0613, 2006 WL 2224518, at *11 (E.D.N.Y. 2006) ("because the text and legislative history of 18 U.S.C. § 1348 clearly establish that it was modeled on the mail and wire fraud statutes, it is useful to be guided by the numerous and well-established precedents on those statutes in construing this statute."); see also United States v. Motz, No. 08-CR-0598, 2009 WL 2486132, at *8 (E.D.N.Y. 2009) (quoting Mahaffy). But since the Government's argument proceeds in the opposite direction-- using the securities fraud statute as a guide for mail and wire fraud--these precedents are less helpful.

[6] See Ray Larsen Assocs., Inc. v. Nikko Am., Inc., No. 89-CV-2809, 1996 WL 442799, at *5 n.3 (S.D.N.Y. 1996) ("these statutes [mail and wire fraud] are broader than common law fraud . . . .").

fraudulent scheme against DHB--the corporation.

The Government here has set forth the challenged offenses in the words of the statutes themselves, and set forth all of the necessary elements to constitute the offenses intended to be punished (conspiracy to commit, mail, and wire fraud). The Government has thus met Hamling's requirements. Hamling, 418 U.S. at 117-18; (see also 2d Sup. Indict. ¶¶ 92, 94, 96). The Government has alleged that Brooks defrauded DHB, depriving it of: the intangible right to the honest services of Brooks and Hatfield (among others), money, and property. Defendants did this by, for example: overstating DHB's quarterly and annual gross profit margins, inventories, and earnings; fraudulently adjusting DHB's subsidiary Point Blank's quarterly reports; fraudulently inflating the value of DHB's and Point Blank's inventories; lying to independent auditors; and diverting millions of dollars worth of DHB assets to Defendants. (See 2d Sup. Indict. ¶¶ 33-48.) As discussed, a defendant can commit fraud against his or her corporation. The Court thus finds that the Government properly alleged fraud against DHB and rejects this argument.

B.   **The Presence of a Fiduciary Duty is not an Element of Mail or Wire Fraud**

Brooks argues that "[n]owhere in the body of the Indictment, as incorporated in the Mail and Wire Fraud Counts, is there any allegation that Mr. Brooks owed a fiduciary duty to DHB, breached said duty, the basis of such breach, or the damages

12

sustained by DHB as a result thereof." (Def.'s Mem. in Support, 14.) As a result, Brooks argues that the Government has merely alleged actions that constitute a civil breach of contract. (Id.) And Brooks argues that mail and wire fraud can only rest on actions that comprise a tort.[7] (Id.) Brooks is wrong.

Allegations of mail and wire fraud do not require the existence of a fiduciary duty. Untied States v. Szur, 289 F.3d 200, 209 (2d Cir. 2002)[8] ("In Sancho, we made clear that '[n]othing in either § 1343 or § 1346 indicates that the existence of an actual fiduciary duty is a necessary element of the crime.'" (quoting United States v. Sancho, 157 F.3d 918, 920-21 (2d Cir. 1998) (per curiam) ("Section 1346 does not require the existence of a fiduciary relationship. The essential element of a violation of § 1343, incorporating § 1346, is a scheme to deprive another of the 'intangible right of honest services.'"))); see also United States v. Skelly, 442 F.3d 94, 97 n.1 (2d Cir. 2006) ("the district court did not include in its charge to the jury the 'honest services' prong of wire fraud--under which there is no fiduciary duty

---

[7] This argument is discussed in detail in Part II.C.

[8] In Szur, the government was required to prove the existence of a fiduciary relationship. See Szur, 289 F.3d at 209. This was because the government alleged, as one of the bases for their case, that defendants violated their fiduciary duties. Id. Since the Government here, as Defendants repeatedly point out, did not allege a violation of fiduciary duties as a basis for its case, the existence of a fiduciary relationship is not an element of the charged crimes.

requirement . . . ."). But the government can, if it chooses, allege fraud violations based upon a breach of fiduciary duties. See, e.g., Szur, 289 F.3d at 209 (alleging violations of the wire fraud statute based upon a breach of fiduciary duties). If the Government here failed to allege that Brooks owed DHB a fiduciary duty, and breached that duty, that does not make the Indictment inadequate.

But the Government did allege that Defendants owed DHB fiduciary duties, (2d Sup. Indict. ¶¶ 5, 18), and it is clear that as a consequence of their positions at DHB as its Chief Executive Officer, and Chief Operating Officer, Defendants owed these duties as a matter of law, see Cargill, Inc. v. JWH Special Circumstance LLC, 959 A.2d 1096, 1116 n.75 (Del. Ch. 2008)[9] ("in the corporate context, both officers and directors of a corporation owe fiduciary duties to the company and its shareholders."); see also Auburn Chevrolet-Oldsmobile-Cadillac, Inc. v. Branch, No. 06-CV-0362, 2009 WL 667430, at *5 (N.D.N.Y. 2009) (same (quoting Cargill, 959 A.2d at 1116 n. 75)). Therefore, while the Government alleged that Defendants owed DHB fiduciary duties, and under the laws of Delaware they owed these duties, they were not required to allege them.

---

[9] DHB is incorporated under the laws of Delaware.

C.  **The Government has Alleged Actions that would be Actionable in Tort**

Brooks argues that the Mail and Wire Fraud Counts are insufficient because they allege actions comprising no more than a civil breach of contract.  (Def.'s Mem. in Support, 14-16.) Specifically, he argues that by allegedly seeking more compensation than that provided for by his 2000 Employment Contract, at worst, all he did was breach that contract.  (Id. at 3.)  And Brooks argues that the underlying actions serving as the basis for an honest-services fraud conviction must be actionable in tort.[10] (Id.)  Because Brooks reads Second Circuit precedent too broadly, and is factually wrong, the Court rejects his argument.

---

[10] Despite Brooks's protestations, the Second Circuit has not held that a breach of contract can never form the underlying basis for honest-services mail or wire fraud.  Brooks's argument--claiming that the Second Circuit has held this--relies on Handakas.  (See id.)  But the Second Circuit has limited Handakas to the facts of that case, and at no time held that a contract could never form the basis for a mail- or wire-fraud conviction. See Rybicki, 354 F.3d at 144 ("Because we conclude that Handakas's conduct was not within the scope of section 1346, we have no occasion to conclude, as the Handakas panel did, that 'the intangible right to honest services' covered by section 1346 can never arise in that context.  We note only that because of the nature of the services to be rendered in Handakas, an intangible right to honest services did not arise out of the contract at issue in that case." (citation omitted) (emphasis in original); Villanueva Madrid, 302 F. Supp. 2d at 192 ("Handakas, therefore, should be read not as an effort to exclude all conduct that could give rise to a breach of contract claim, but rather as an effort to prevent a state of the law in which the government could recast any and all contractual breaches as federal crimes.").  Because the Government has alleged actions that comprise a tort, the Court does not reach the question of whether actions comprising only a breach of contract can support a fraud conviction.

Brooks's argument that the Government's allegations only comprise a civil breach of contract is factually incorrect.  In the first six Counts of the Indictment, including Counts Three through Five, the Government alleges--on the face of the Indictment--more than a  mere breach of contract.  (<u>See</u> 2d Sup. Indict. ¶¶ 87-98.) For example, the Government has alleged that Brooks submitted falsified documents to the Audit Committee that materially misrepresented the nature of many of the expenses for which he was compensated.  (<u>Id.</u> ¶¶ 55-70.)  This would constitute conversion and common-law fraud, both torts.  <u>See</u> <u>Block v. First Blood Assocs.</u>, 988 F.2d 344, 346 (2d Cir. 1993) (stating fraud is a common-law tort).  Further, actions that breach a contract can also be actionable in tort--the two are not mutually exclusive.  <u>See, e.g.</u>, <u>U.S. for Use and Benefit of Evergreen Pipeline Const. Co., Inc. v. Merritt Meridian Const. Corp.</u>, 95 F.3d 153, 160-61 (2d Cir. 1996) ("Punitive damages are available where the conduct constituting, accompanying, or associated with the breach of contract is first actionable as an independent tort . . . .");  <u>Hedaya Bros., Inc. v. Fed. Ins. Co.</u>, 799 F. Supp. 13, 15 (E.D.N.Y. 1992) ("since Hedaya's <u>ad</u> <u>damnum</u> clause for punitive and exemplary damages is available only if the breach of the insurance contract <u>also</u> constitutes a public fraud, it is well settled that Rule 9(b) applies to this claim." (emphasis supplied)).

The Government alleges that Brooks was seeking more than

just "additional compensation or remuneration from DHB in breach of his employment agreement and his other documented financial arrangements with DHB." (Def.'s Mem. in Support, 3.) Rather, the Government's allegations include that Brooks used DHB and DHB subsidiary checks and American Express cards to pay for: over $5 million worth of improvements on his homes; his horse business; vehicles; gifts; bonuses; family vacations; flights on his personal jet; his family's bar and bat mitzvah expenses; and other personal expenses for himself and his family. (2d Sup. Indict. ¶¶ 37-48, 91-96.) Thus, the Government has, on the face of the indictment, alleged conversion and common-law fraud, if tort allegations are required. So even if the Second Circuit or Supreme Court were to hand down a new decision limiting honest-services fraud only to facts sounding in tort (which as of now is not the law), the Government's Indictment would survive.

D. <u>The Indictment Properly Charges Brooks in the Conjunctive</u>

Brooks argues that courts apply § 1346 disjunctively, "that is, the charge must include the language of the cited statutes <u>or</u> the depravation of the 'intangible right of honest service.'" (Def.'s Mem. in Support, 11 (emphasis supplied).)[11] He

---

[11] It would appear that Brooks's attorneys performed no legal research before making this argument. There is clear Second Circuit precedent, discussed below, stating that when a statute is written in the disjunctive, it is proper for an Indictment to read in the conjunctive. In fact, this is the standard way that defendants are charged. The Government should have presented this line of caselaw to the Court--but it

goes on to argue that the Indictment expresses the Mail and Wire Fraud Counts conjunctively, "integrating the two criminal offenses into one." (Id. at 11-12.)[12] In Brooks's view, the Government should have to prove both a scheme to deprive DHB of the intangible right of honest services, and a scheme to defraud DHB of money or property in order to convict on either.

In support of his theory, Brooks cites Handakas, 286 F.3d 92 (2d Cir. 2002). But Brooks's tortured reading of Handakas and the Indictment does not support his contention. Simply because the Government has alleged that Brooks schemed to defraud DHB both of honest services, and money or property does not mean that it has to prove that he in fact defrauded DHB of both. Proving that Brooks defrauded DHB of either honest services, or money or property will

_____

neglected to even respond to this argument.

Further, in Brooks's Supplemental Memorandum, it appears that he rehashes this same argument. (See Def.'s Suppl. Mem. L., 10-12.) There, he argues that it was improper for the Government to charge him with both honest-services fraud, and a scheme to defraud money or property. As discussed below, the Government is allowed to charge in the conjunctive. The Government's choice to charge Brooks with both types of fraud is perfectly allowable.

Moreover, this same argument was rejected in Brooks's prior motion to dismiss. See United States v. Hatfield, No. 06-CR-0550, 2009 WL 2182593, at *3 (E.D.N.Y. July 22, 2009).

[12] For example, Count Five, charging Brooks and Hatfield with wire fraud, reads: "to deprive DHB of the intangible right to the honest services of its employees DAVID H. BROOKS, SANDRA HATFIELD, Jane Doe #1 and others, and to obtain money and property from DHB . . . ." (2d. Sup. Indict. ¶ 96 (emphasis supplied).)

satisfy the criminal elements of the statute. It is permissible for indictments to charge defendants in the conjunctive, despite the fact that the statute reads in the disjunctive. <u>See</u> <u>United States v. Astolas</u>, 487 F.2d 275, 280 (2d Cir. 1973), <u>cert.</u> <u>denied</u>, 416 U.S. 955, 94 S. Ct. 1968, 40 L. Ed. 2d 305 (1974) ("The statute reads in the disjunctive, 'or,' and the indictment alleges in the conjunctive, 'and.' It is argued that this requires for conviction a finding that the stolen goods not only 'constituted' an interstate shipment, but also that the goods were 'moving as' and 'were a part of' an interstate shipment. . . . An indictment may charge alternate ways of violating a statute in the conjunctive, and a conviction under such an indictment will be sustained if the evidence justifies a finding that the statute was violated in any of the ways alleged."). To require the Government to prove everything alleged in the conjunctive would benefit criminals too much, and hamstring the Government in what it could charge. The Government may properly charge Brooks in the conjunctive.

Moreover, under Brooks's argument, the government would, in practice, never be able to charge alternative ways of violating a statute. For if the government did, it would have to prove each individual alternative in order to convict on any of the charges. The Government would have to choose one narrow theory on which to base its case, since under his argument, if the Government charged in the alternative, it would have to prove every allegation—even

if not required by statute.  This makes no logical sense, nor does the Second Circuit require it.  The Government _is_ permitted to charge in the alternative.  <u>See</u> <u>United States v. Brown</u>, No. 07-CR-0874, 2009 WL 425919, at *2 (E.D.N.Y. 2009) ("An indictment may charge 'in a single count . . . the commission of a crime by several means.'" (citations omitted)); <u>United States v. Sugar</u>, 606 F. Supp. 1134, 1145 (S.D.N.Y. 1985) ("[a]n indictment may charge alternate ways of violating a statute in the conjunctive, and a conviction under such an indictment will be sustained if the evidence justifies a finding that the statute was violated in any of the ways alleged." (quoting <u>Astolas</u>, 487 F.2d at 280)).

III. <u>The Proxy Statement was in Furtherance of the Alleged Scheme</u>

To violate the mail or wire fraud statutes, a defendant must use the mails or wires, respectively, in furtherance of his or her scheme or artifice to defraud.  The Government alleges that Brooks used the mails and wires because DHB's "Proxy Statement, and all of DHB's Annual Reports on Form 10-K, were distributed to DHB's shareholders through the United States Mail.  The Proxy Statement, Forms 10-K and Forms 10-Q were also filed with the SEC through the SEC's electronic filing system, known as the 'EDGAR' system." (2d Sup. Indict. ¶ 71.)

On March 9, 2004, the SEC issued a Formal Order of Investigation regarding DHB.  (2d Sup. Indict. ¶ 54.)  As part of its investigation, the SEC subpoenaed DHB, seeking "records

reflecting all compensation paid to DHB's corporate officers, including expense payments, housing allowances and prerequisites." (<u>Id.</u>) During the course of the investigation, the SEC made it clear that its "primary focus" centered on Brooks's compensation. (<u>Id.</u>) As a consequence, the DHB Board Audit Committee began investigating Brooks's compensation. (<u>Id.</u> ¶ 55.) Responding to the Audit Committee's investigation, Brooks "caused a detailed report to be submitted to the Audit Committee." (<u>Id.</u>) This report discussed Brooks's compensation, and was prepared by him along with others acting at his direction. (<u>Id.</u>) The Report concluded that Brooks's "excessive" use of the DHB credit cards was offset by unreimbursed business expenses owed to Brooks, and DHB actually owed Brooks over $900,000. (<u>Id.</u> ¶ 56.) After the Audit Committee accepted the report, Brooks waived his right to reimbursement for the expenses. (<u>Id.</u>) On September 10, 2004, the Audit Committee submitted the Report, exhibits, and Brooks's waiver to the SEC. (<u>Id.</u> ¶ 57.) Then, on November 24, 2004, DHB filed the Proxy Statement electronically on EDGAR, and mailed the statement to its shareholders. (<u>Id.</u>) This Proxy Statement contained a summary of the conclusions from the Report. (<u>Id.</u>) The Government alleges that both the Report and Proxy Statement were materially false and misleading. (<u>Id.</u> ¶ 58.)

Brooks argues, however, that "no conceivable fraud related to DHB is remotely attached to the Proxy Statement."

(Def.'s Mem. in Support, 21.)  In support of this argument, Brooks reasons that: Brooks's knowledge of the fraud was imputed to DHB, so DHB was aware of all payments to Brooks; the mailing or wiring of the Proxy Statement was not causally related to, or in furtherance of, a scheme directed at DHB; the Proxy Statement was prepared and solicited on behalf of DHB's Board of Directors (the "Board") for DHB, and not prepared by Brooks; the Proxy Statement was not designed to achieve any goals of the scheme; and the dissemination of the Proxy Statement was "after the fact," and as a matter of law, deprived the Court of federal jurisdiction.  (<u>Id.</u> at 21-22.)  These arguments are not persuasive and the Court rejects them.

A.  <u>The Proxy Statement was Part of Brooks's Scheme or Artifice to Defraud</u>

Brooks argues that "the dissemination of the Proxy Statement would have been after the fact, disqualifying it, as a matter of law, as a source of federal jurisdiction." (Def.'s Mem. in Support, 22.)  Essentially, Brooks is arguing that the Government failed to establish any use of the mails or wires sufficient to bring his conduct within the jurisdictional scope of the mail or wire fraud statutes.  Brooks is incorrect.

The mailing or wiring does not need to be an essential part of scheme.  <u>United States v. Altman</u>, 48 F.3d 96, 102 (2d Cir. 1995) ("The scheme to defraud need not contemplate the use of the mails as an essential part of the scheme as long as the mailing is

'<u>incident</u> to an essential part of the scheme.'" (emphasis in original) (quoting <u>Pereira</u>, 347 U.S. at 8)). The mailing or wiring must only be "incident to an essential part of the scheme." <u>Altman</u>, 48 F.3d at 102. All the government must demonstrate is that the defendant knew, or should have reasonably foreseen, that the use of the mails or wires would follow in the ordinary course of business. <u>Id.</u> at 102-03 ("The government must establish that the defendant caused the mailing, i.e., 'act[ed] with knowledge that the use of the mails will follow in the ordinary course of business, or where such use can reasonably be foreseen, even though not actually intended.'" (quoting <u>Pereira</u>, 347 U.S. at 8-9)). While the mailing cannot occur after the "scheme has reached fruition," <u>see</u> <u>Altman</u>, 48 F.3d at 103, a mailing aimed at preventing the discovery of a fraudulent scheme <u>is</u> in furtherance of that scheme, and can provide the jurisdictional basis for the case, <u>see</u> <u>United States v. Tocco</u>, 135 F.3d 116, 126 (2d Cir. 1998). "Mailings occurring after . . . [the] fraud are within the statute if they 'were designed to lull the victims into a false sense of security, postpone their ultimate complaint to the authorities, and therefore make the apprehension of the defendants less likely than if no mailings had taken place.'" <u>United States v. Lane</u>, 474 U.S. 438, 451-52, 106 S. Ct. 725, 88 L. Ed. 2d 814 (1986) (quoting <u>United States v. Maze</u>, 414 U.S. 395, 403, 94 S. Ct. 645, 38 L. Ed. 2d 603 (1974)); <u>Tocco</u>, 135 F.3d at 126 (quoting <u>Lane</u> with

approval).  Moreover, there is "no requirement that the mailings precede the fraud."  Slevin, 106 F.3d at 1089.  So even if Brooks were correct that the use of the mails took place at the end of Brooks's scheme to defraud,[13] the Government can still prove that the mails and wires were used to help conceal his fraud.  And the concealment of the fraud can provide the basis for jurisdiction.

It is irrelevant that Brooks did not personally write the Proxy Statement.  Bortnovsky, 879 F.2d at 36-37 ("it is not significant for purposes of the mail fraud statute that a third-party, rather than the defendant, wrote and sent the letter at issue, providing, . . . the defendants could reasonably have foreseen that the third-party would use the mail in the ordinary course of business as a result of defendants' act.").  The relevant inquiry is whether Brooks knew or reasonably should have known that the mails or wires would be used.  Id. at 37 ("The question is whether the defendant reasonably foresaw that the mails would be used, not by whom or to whom the mailing was made, as is evident by the cases holding that correspondence between many combinations of senders and receivers constitutes mail fraud.").  And further, Brooks did not have to intend for there to be a mailing or wiring, so long as he acted with the knowledge that the mails or wires

---

[13] The Court does not agree with Brooks that the use of the mails and wires took place "after the fact."  Since the fraud was ongoing at the time of the mailings, the Government's argument that the mailings and wirings were contemporaneous with the fraud, (Gov't Letter Jan. 26, 2009, 4), is persuasive.

would be used in the ordinary course of business, or if it could have reasonably been foreseen.  <u>Id.</u> at 39 ("A defendant need not actually intend, agree to or even know of a specific mailing to 'cause' mail to be sent as long as he or she 'does an act with knowledge that the use of mails will follow in the ordinary course of business, or where such can reasonably be foreseen.'" (quoting <u>United States v. Bucey</u>, 691 F. Supp. 1077, 1088-89 (N.D. Ill. 1988)).

On the face of the Indictment, the alleged facts demonstrate that Brooks knew or should have known that the mails or wires would be used.  DHB began investigating Brooks's compensation to respond to an SEC subpoena.  The report Brooks then generated-- which he submitted to DHB for DHB's use--was allegedly full of false or misleading statements.  And under the facts as alleged, Brooks knew, or reasonably should have known, that, since DHB had to respond to the SEC, the mails, wires, or both would be used.  In fact, in his Memorandum of Law, Brooks admits that he knew the Proxy Statement would be disseminated by the mails and/or wires-- calling the creation of the Proxy Statement "compulsory." (Def.'s Mem. in Support, 22.)  The Government has sufficiently alleged the use of the mails or wires in furtherance of Brooks's scheme to defraud.

B.  The Mailing or Wiring of the Proxy Statement was
    Causally Related to, or in Furtherance of, a Scheme
    Directed at DHB

Related to his other arguments, Brooks posits that "it is logically and legally inconceivable how . . . its mailing or wiring was causally related to, or in furtherance of, a scheme directed at DHB." (Def.'s Mem. in Support, 22.) Brooks bases this argument on the fact that the Proxy Statement was prepared by DHB's Board, not Brooks, and his argument that the Statement was not designed to advance the goals of his alleged scheme. (Id.) The Court understands this to be the identical argument discussed in Part III.A. For the same reasons, this argument is rejected.

As discussed, the necessary mailing or wiring can be produced by someone other than the defendant, can be incidental to the scheme to defraud, and can be designed to lull the victims into a false sense of security, thus postponing disclosure to the authorities and preventing the defendant's arrest. See supra Part III.A. Because Brooks allegedly caused the Proxy Statement to contain false information through his false and misleading report, and was designed to prevent discovery of his fraud, it was causally related to the alleged scheme to defraud.

C.  The Proxy Statement Satisfies the Jurisdictional
    Component Despite Being Written by DHB's Board

Brooks argues that the Proxy Statement cannot be the basis for federal jurisdiction because it was "prepared and solicited on behalf of the Board or Directors of DHB . . . not

26

prepared by Mr. Brooks . . . ." (Def.'s Mem. in Support, 22.)
This argument fails.

Mailings or wires written by third parties can form the
basis for federal jurisdiction if it was foreseeable to the
defendant that the third party would use the mail or wires in the
ordinary course of business, as the result of the defendant's acts.
See Bortnovsky, 879 F.2d at 36-37. DHB created the Audit Report
and Proxy Statement in response to a subpoena. And the subpoena
stemmed from the SEC's investigation of Brooks's DHB compensation.
Brooks then allegedly provided false information to the Board,
knowing that it would be disseminated--through the mail, wires, or
both--since DHB was required to respond to the SEC, and Brooks
admitted the Proxy Statement was "compulsory." This satisfies the
jurisdictional component.

D. The Proxy Statement was Designed to Advance Brooks's
Alleged Scheme

Brooks alleges that the Proxy Statement was not "designed
to achieve any theoretical goal of the alleged compensation
scheme." (Def.'s Mem. in Support, 22.) He is incorrect.

A mailing or wire will satisfy the jurisdictional
component if its purpose is to delay or prevent discovery of the
fraud. See Lane, 474 U.S. at 451-52 (quoting Maze, 414 U.S. at
403). Lying to auditors to cover up a fraud would be for the
purpose of preventing the discovery of the fraud. Further, the
Government has alleged that the fraud continued following the

27

dissemination of the Proxy Statement, as Brooks still received payments in late 2004, and into 2006. (2d. Sup. Indict. ¶¶ 34-37.) At a minimum, the Indictment's facts allege that Brooks's report was meant to conceal the honest services, or money or property that Brooks allegedly stole from DHB. (See 2d Sup. Indict. ¶¶ 67-71; Gov't Letter Jan. 26, 2009, 3.) Because Brooks allegedly lied to the Audit Committee, causing a false Proxy Statement to be filed electronically and mailed, this standard would be satisfied on the face of the Indictment. Thus, Brooks's argument fails.

E. Brooks's Knowledge of the Fraud is Not Imputed to DHB

Brooks argues that, "[s]ince[] by operation of corporate law, DHB can only act through its officers and directors, and is otherwise charged and imputed with their knowledge, . . . there is nothing in regard to Mr. Brooks [sic] emoluments which were secretly undisclosed by him to DHB." (Def.'s Mem. in Support, 22.) Because of this, Brooks argues, there can be no scheme or artifice to defraud DHB, since DHB was aware of his alleged fraud. (Id.) This argument is rejected.

As a matter of law, the Court declines to impute Brooks's knowledge of the fraud--if any--on DHB itself. Brooks's alleged fraud was against DHB, not on DHB's behalf. In fraud cases, courts have imputed a defendant's knowledge of a fraud on a corporation only when the fraud was on behalf of the corporation. See, e.g., In re Maxwell Newspapers, Inc., 164 B.R. 858, 869 n.18 (Bankr.

28

S.D.N.Y. 1994) ("In <u>Cenco</u>, the court imputed the knowledge of the top managers to the corporation because fraud was committed on behalf of the corporation . . . ." (citation omitted)); <u>In re Crazy Eddie Sec. Litig.</u>, 802 F. Supp. 804, 817 (E.D.N.Y. 1992) ("If the fraud committed by Crazy Eddie's top officers was on behalf of the corporation, their knowledge and actions are deemed those of the corporation."). And the Second Circuit has held that officers of a corporation can be held culpable for committing fraud against their corporation. <u>See</u> <u>United States v. Wallach</u>, 935 F.2d 445, 464 (2d Cir. 1991) (holding that officers and directors are not free to defraud and loot their corporation).

At least part of the alleged fraud here was not on DHB's behalf. Brooks allegedly usurped millions of dollars that should have gone to the corporation itself. His knowledge will thus not be imputed on DHB. Moreover, if Brooks's argument were accepted, then an officer or director of a corporation could never be convicted of defrauding his or her corporation. Logically, this makes no sense. <u>See</u> <u>Wallach</u>, 935 F.2d at 464.

IV. <u>This Court is Bound by Current Second Circuit Precedent</u>

Following the briefing in this case, Brooks submitted a Supplemental Memorandum of Law citing "new authority." (<u>See</u> Def.'s Suppl. Mem. L., 1-14.) Brooks's purpose was to alert the Court of the Supreme Court's recent grants of certiorari in honest-services fraud cases, in <u>Black v. United States</u>, 530 F.3d 596 (7th Cir.

2009), <u>cert. granted</u>, __ U.S. __, 29 S. Ct. 2863, 174 L. Ed. 2d 575

(U.S. June 29, 2009) (No. 08-1196); and <u>Weyhrauch v. United States</u>,

__ U.S. __, 129 S. Ct. 2863, 174 L. Ed. 2d 575 (U.S. June 29, 2009)

(No. 08-1196).[14]  Brooks also discussed Justice Scalia's dissent

from the denial of certiorari in <u>Sorich v. United States</u>, 523 F.3d

702 (7th Cir. 2008), <u>cert. denied</u>, __ U.S. __, 129 S. Ct. 1308, 173

L. Ed. 2d 645 (U.S. Feb. 23, 2009) (No. 08-410).  Because the

Second Circuit has law directly on point, Brooks's arguments are to

no avail, and are denied.

Brooks cites Justice Scalia's dissent in <u>Sorich</u> as a

means to attack the Second Circuit's en banc decision in <u>Rybicki</u>.

(<u>See</u> Def.'s Suppl. Mem. L., 3-5.)[15]  Justice Scalia, in his dissent,

---

[14] Both <u>Black</u> and <u>Weyhrauch</u> are scheduled for oral argument
in front of the Supreme Court on December 8, 2009.  <u>See</u> Supreme
Court Argument Calender for the Session Beginning Nov. 30, 2009,
http://www.supremecourtus.gov/oral_arguments/argument_calendars/M
onthlyArgumentCalDecember2009.pdf (last visited Oct. 21, 2009).

[15] Brooks also asks this Court to overrule settled Second
Circuit Precedent.  (Def.'s Suppl. Mem. L., 2 ("Mr. Brooks
asserts that the Counts, 3, 4, and 5 should be dismissed . . .
[because] Section 1346 is void for vagueness.").)  The Second
Circuit, sitting en banc, has already held section 1346 is
facially valid.  <u>See</u> <u>Rybicki</u>, 354 F.3d at 144 ("Our analysis
reveals that the statute's clear prohibition applies to a wide
swath of behavior.  We conclude that the statute is not
unconstitutional on its face under either <u>Salerno</u> or <u>Morales</u>.").
Instead of following this settled precedent, Brooks would have
the Court follow the <u>Rybicki</u> dissenters.  (Def.'s Letter July 31,
2009, 2 (in arguing for the Court to follow Justice Scalia's
dissent, and to predict the Supreme Court's decisions in <u>Black</u>
and <u>Weyhrauch</u>, stating: "[e]ven before <u>Sorich</u> and the grants of
certiorari that have followed, in this Circuit there were four
votes in <u>Rybick</u> to <u>strike down the entire honest services fraud
statute as void for vagueness</u>." (emphasis in original).)  The

30

criticized the "staggeringly broad swath of behavior" that has been prosecuted under the honest-services provision of 18 U.S.C. § 1346. Sorich, 129 S. Ct. at 1309 (Scalia, J., dissenting). He fears that "[w]ithout some coherent limiting principle to define what 'the intangible right of honest services' is, whence it derives, and how it is violated, this expansive phrase invites abuse by headline-grabbing prosecutors in pursuit of . . . corporate CEOs who engage in any manner of unappealing or ethically questionable conduct." Id. at 1310.

While Brooks agrees with Justice Scalia's opinions and views on § 1346, and would like for that to be the law, Justice Scalia's dissent is simply not binding. This Court is bound by Second Circuit and Supreme Court precedent. See Bayer Schera Pharma AG v. Sandoz, Inc., Nos. 08-CV-3710, 08-CV-8112, 2009 WL 440381, at *4 (S.D.N.Y. 2009) ("this Court is constrained--by controlling Supreme Court precedent . . . ."); United States v. Khan, 591 F. Supp. 2d 166, 167 n.1 (E.D.N.Y. 2008) ("This court is bound by Second Circuit precedent . . . ."). And Rybicki is the controlling law within the Second Circuit on honest-services fraud. See, e.g., United States v. Kerik, 615 F. Supp. 2d 256, 266 (S.D.N.Y. 2009) (rejecting defendant's argument that 18 U.S.C. § 1346 is unconstitutionally vague, holding the issue was foreclosed

---

Court declines to overrule the Second Circuit (which, of course, it lacks the power to do).

by <u>Rybicki</u> and <u>Middlemiss</u>,[16] while acknowledging Justice Scalia's dissent in <u>Sorich</u>). While this Court is constrained by controlling Supreme Court precedent, a grant of certiorari does not effect new law, and has no precedential value. <u>See</u> <u>Ritter v. Thigpen</u>, 828 F.2d 662, 665-66 (11th Cir. 1987) ("A grant of certiorari does not constitute new law."); <u>cf.</u> <u>Shaw v. Delta Air Lines, Inc.</u>, 463 U.S. 85, 94 n.11, 103 S. Ct. 2890, 77 L. Ed. 2d 490 (1983) ("denials of certiorari have no precedential force."). Nor is a dissent, even from the Supreme Court, binding precedent on this Court. <u>See</u> <u>Booker v. BWIA W. Indies Airways Ltd.</u>, No. 06-CV-2146, 2007 WL 1351927, at *3 (E.D.N.Y. 2007) ("Plaintiff cites to Justice Stevens'[s] dissent in <u>El Al</u> . . . . A dissent, however, is not binding and has absolutely no precedential value."); <u>see</u> <u>also</u> <u>City of Oneida, N.Y. v. Salazar</u>, No. 08-CV-0648, 2009 WL 3055274, at *2 (N.D.N.Y. 2009) ("This dissent, however, has no precedential value . . . ."). Until the Supreme Court hands down its opinion in these cases[17]--assuming that they will decide an issue that controls this case--the Court is bound by current Second Circuit and Supreme

---

[16] 217 F.3d 112 (2d Cir. 2000).

[17] In his letter dated July 31, 2009, Brooks argues that because the Supreme Court granted certiorari in these cases, it "certainly presage[s] a forthcoming change in the legal landscape." (Def.'s Letter July 31, 2009, 1.) Brooks ignores the idea--or simply refuses to believe--that the Supreme Court can decide the case in a way that is detrimental to his case. It would be inappropriate for this Court to reject settled and binding law for the speculations of Brooks and commentators.

Court precedent.

## V. The Government is not Couching Securities Fraud in Honest-Services Fraud Clothing

Brooks argues that honest-services fraud should not reach those actions that also constitute securities fraud. (See Def.'s Suppl. Mem. L., 8-10.) Although Defendant cites no Second Circuit precedent, he cites to, and asks this Court to follow, a Fifth Circuit case: United States v. Brown, 459 F.3d 509 (5th Cir. 2006).[18] In Brown, the Fifth Circuit declined to expand honest-services fraud to reach "all manner" of accounting and securities fraud. Id. at 523 n.13. The Court does not agree with Brooks's argument.

First, the Court does not read Brown as broadly as Brooks does. The Fifth Circuit declined to expand honest-services fraud to reach "all manner" of securities fraud. The Court does not understand this to mean that no set of facts, also constituting securities fraud, can then be prosecuted as honest-services fraud. Instead, the Fifth Circuit wanted to limit overzealous prosecutors from simply charging a defendant with every type of fraud imaginable. The Court does not find that situation here. The Government has alleged legitimate crimes. Second, the Court does

---

[18] The Government chose not to substantively respond to this argument, simply stating Defendant ignores Second Circuit precedent. (Gov't Letter July 24, 2009, 2.) Instead, "the government decline[d] to rehash this discussion." Despite the fact that the Court agrees with the Government's position, this form of "argument" does not aid the Court in its decisionmaking.

not believe the Government has simply dressed securities fraud in honest-services-fraud clothing. Brooks is alleged to have fraudulently acted in his own interests, as opposed to DHB's interests, accompanied by material misrepresentations (or omissions) of information disclosed to DHB. That the mailings and wiring occurred in conjunction with an SEC filing should not insulate Brooks from honest-services fraud liability. The Second Circuit does not require that result, and the Fifth Circuit's precedents are not binding on this Court.

## VI. Brooks's Case Fits Within the Self-Dealing Prong of Rybicki

In Rybicki, the Second Circuit split honest-services fraud into two categories: (1) bribery or kickback cases; and (2) self-dealing cases. Rybicki, 354 F.3d at 139 ("The private-sector honest services cases fall into two general groups, cases involving bribes or kickbacks, and cases involving self-dealing."). Brooks argues that his case does not fit into either section. (Def.'s Suppl. Mem. L., 10-12.) The Court disagrees.

"In the bribery or kickback cases, a defendant who has or seeks some sort of business relationship or transaction with the victim secretly pays the victim's employee (or causes such a payment to be made) in exchange for favored treatment." Rybicki, 354 F.3d at 139. In self-dealing cases, however, "the defendant typically causes his or her employer to do business with a corporation or other enterprise in which the defendant has a secret

interest, undisclosed to the employer." Id. at 140 (emphasis supplied). Brooks falls in the self-dealing category.

As quoted above, the court in Rybicki only described the "typical" self-dealing case. This implies that there are self-dealing cases that will not precisely follow that pattern. The Government's case against Brooks is one of those cases. When the en-banc court in Rybicki summarized its interpretation of honest-services fraud, it said:

> the term "scheme or artifice to deprive
> another of the intangible right to honest
> services" in section 1346, when applied to
> private actors, means a scheme or artifice to
> use the mails or wires to enable an officer or
> employee of a private entity (or a person in a
> relationship that gives rise to a duty of
> loyalty comparable to that owed by employees
> to employers) purporting to act for and in the
> interests of his or her employer (or of the
> other person to whom the duty of loyalty is
> owed) secretly to act in his or her or the
> defendant's own interests instead, accompanied
> by a material misrepresentation made or
> omission of information disclosed to the
> employer or other person.

Id. at 141-42 (footnote omitted). This description matches up with what the Government alleges: that Brooks defrauded DHB to pay for his personal expenses--that Brooks purported to act in the best interests of DHB, to whom he owed a duty of loyalty via his position as CEO, but instead was secretly acting in his own interests, in having DHB pay for personal expenses. Brooks's argument is thus rejected.

<u>CONCLUSION</u>

For the foregoing reasons, Defendant's Motion to Dismiss Counts Three, Four, and Five of the Indictment is DENIED.


SO ORDERED.

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.


Dated:     Central Islip, New York
           October   27  , 2009

36