UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------X
UNITED STATES OF AMERICA,

       -against-                          <u>MEMORANDUM AND ORDER</u>
                                            06-CR-0550 (JS)

SANDRA HATFIELD, DAVID H. BROOKS,
PATRICIA LENNEX,

                    Defendants.
------------------------------------X
APPEARANCES:
For Government:      Richard Thomas Lunger, Jr., Esq.
                    Christopher Allen Ott, Esq.
                    James Halleron Knapp, Esq.
                    James M. Miskiewicz, Esq.
                    United States Attorneys Office
                    610 Federal Plaza
                    Central Islip, NY 11722-4454
For Defendants:

Sandra Hatfield     Roland G. Riopelle, Esq.
                    Maurice H. Sercarz, Esq.
                    Sercarz & Riopelle, LLP
                    152 West 57th Street, 24th Floor
                    New York, NY 10019

David Brooks        John C. Meringolo, Esq.
                    Meringolo and Associates, P.C.
                    1790 Broadway, Suite 1501
                    New York, NY 10019

                    Zaki I. Tamir, Esq.
                    Gofer Tamir and Assoc.
                    55 Broad Street
                    New York, NY 10004

                    James M. LaRossa, Esq.
                    240 West End Avenue
                    New York, NY 10023

                    Kenneth Ravenell, Esq.
                    William H. Murphy, Jr., Esq.
                    The Murphy Firm
                    1 South Street, 23rd Floor
                    Baltimore, MD 21202

Richard Ware Levitt, Esq.
Yvonne Shivers, Esq.
Law Offices of Richard W. Levitt
148 E. 78th Street
New York, NY 10021

Roger V. Archibald, Esq.
William C. Thompson, Esq.
16 Court Street
Brooklyn, NY 11241

SEYBERT, District Judge:

Pending before the Court is the Government's motion to reconsider the Court's May 7, 2010 Oral Ruling striking the 2005 and 2006 Cablevision evidence (Docket No. 1006). For the foregoing reasons, that motion is DENIED.

## BACKGROUND

At trial, the Government introduced several Cablevision cable television bills. These bills contained, among other things, charges for numerous adult movies. The Government introduced these bills under a theory that, because DHB paid for them despite their non-business nature, the bills were part of the undisclosed and unauthorized compensation that Mr. Brooks allegedly received from DHB.

But, on cross-examination, the Government's key witness, Dawn Schlegel, testified that DHB did not, in fact, spend shareholders' money to pay these bills. Instead, DHB deducted the cost of these bills from money it otherwise owed Mr. Brooks. (Tr. 9603-9608). Specifically, Ms. Schlegel

testified that the bills were deducted from the $25,000 per month that DHB had agreed to pay Mr. Brooks as rent on his Florida apartment. (Tr. 9422, 9603). This $25,000 per month was fully disclosed to shareholders on December 31, 2004, when DHB set forth in its 10-K that "the compensation committee approved the fair rental value payment of $25,000 per month for the cost of renting Mr. Brooks [sic] Florida residence, to formalize the provision in his employment contract which calls for reimbursement of his Florida living expenses." DHB Industries, Inc., Form 10-K, filed 12/31/2004 at p. 52 (hereafter, "10-K"). Accordingly, the evidence at trial conclusively showed that Mr. Brooks, and not DHB, paid for the 2005 and 2006 Cablevision bills, because DHB offset the bills' expense from the $25,000 a month rent it paid Mr. Brooks. As a result, the Court found that the Cablevision bills were not probative of any crime charged in the Superseding Indictment, and struck all evidence concerning them.

## DISCUSSION

The Government now seeks reconsideration of the Court's decision striking this evidence. But the Government's arguments are without merit.

1.   Based On The Evidence Presented, The $25,000 Monthly Rent
     Was Neither Undisclosed Nor Unauthorized

          The Government principally seeks reconsideration on

the grounds that the Court's decision "legitimizes the

$300,000," which the Government contends is "another example of

Brooks's looting."      But, in so arguing, the Government

misunderstands its own case.    Mr. Brooks is not charged with

"looting."      Indeed, except in the Uniform Code of Military

Justice, "looting" is not a federal offense.    See 10 U.S.C. §

903.    Instead, Mr. Brooks is charged with various criminal

violations, including securities fraud, mail fraud, and wire

fraud.    In this context, what the Government calls "looting"

refers, less pejoratively, to allegations that Mr. Brooks

received "Undisclosed and Unauthorized Executive Compensation."

See, generally, Superseding Indictment ¶¶ 31-48.    Under such a

theory, Mr. Brooks' alleged compensation was not illegal, per

se.    It was illegal only because DHB did not publicly disclose

to shareholders that: (1) Mr. Brooks received such compensation;

and/or (2) did so without the Company's authorization.    After

all, there is nothing illegal about executives receiving

excessive, unreasonable compensation from public companies –

provided that the company fully authorizes these compensation

arrangements, and then discloses their material details to shareholders.[1]

Here, DHB did so. DHB's 2004 10-K, filed before DHB "offset" any of the 2005 Cablevision bills, disclosed that the Company had agreed to pay Mr. Brooks $25,000 a month "for the cost of renting Mr. Brooks Florida apartment." The Government raises several arguments to the contrary. But none of these arguments are persuasive.

First, the Government argues that the $25,000 per month was not authorized because there is no evidence that DHB's compensation committee actually approved the $25,000 a month payment. But this argument improperly conflates (alleged) absence of evidence with proof of absence. In a criminal trial, the Government bears a heavy burden of proof. Despite this burden, the Government has introduced nothing to support its theory that DHB's compensation committee did not, in fact, authorize the $25,000 a month payment. Nor has the Government proffered that it will introduce such evidence. On the flip side, as the defense notes, DHB's compensation committee members were also Board members. See 10-K at p. 41. And, in this capacity, they approved the 10-K that included the $25,000 a

---

[1] Indeed, it is for this very reason that, as the Court's order that will issue later today explains, the Court is excluding Kenneth McGraw's testimony. The "reasonableness" of Mr. Brooks' compensation is irrelevant. What matters is whether DHB authorized it and publicly disclosed it.

month disclosure. Accordingly, given the evidence (or lack thereof), no rational jury could find, beyond a reasonable doubt, that the compensation committee failed to authorize the $25,000 a month rental payments, despite approving the language disclosing those payments.

Second, the Government argues that the 10-K's disclosure was materially inaccurate because it refers to "reimbursement of his Florida living expenses." The Government contends that Mr. Brooks did not spend $25,000 a month on living expenses. Thus, the Government theorizes, the $25,000 a month reflected some other non-disclosed expense, such as depreciation. The Court disagrees. Although referring to that provision in Mr. Brooks' employment agreement, the 10-K did not say that it was paying Mr. Brooks $25,000 a month for "living expenses." It disclosed that it was paying Mr. Brooks $25,000 a month as the "fair rental value . . . for the cost of renting [his] Florida apartment." Thus, by its plain text, the 10-K described the $25,000 a month payments as rent.

Third, at oral argument, the Government represented that $25,000 was not the apartment's fair rental value. Thus, the Government argues, the 10-K was materially false. But, to prove such an allegation in a criminal trial against Mr. Brooks, the Government would need to adduce evidence showing: (1) the apartment's actual fair market value; and (2) that Mr. Brooks

exerted some kind of unlawful, undisclosed pressure on DHB's compensation committee to approve such an excessive valuation. The Government has neither done so, nor proffered that it will do so.[2]  So no reasonable jury could conclude that the 10-K was materially false in that respect.

Finally, the Government has previously argued that, while the 2004 10-K disclosed the $25,000 a month, it failed to disclose that Mr. Brooks would receive some of this compensation in a form other than cash.  But this non-disclosure is not securities fraud.  The 10-K fully and accurately disclosed the cost to the Company, and the benefit to Mr. Brooks: $25,000 a month.  It is unfathomable why any rational investor would care whether DHB paid Mr. Brooks that amount in cash, or paid certain bills on his behalf then deducted those amounts from his rent check.  Either way, the Company paid the same amount, and Mr. Brooks received the identical financial benefit.  It is not fraud, much less securities fraud, for a public company to pay an executive's cable bill, and then offset that cost from money it otherwise owes the executive – in much the same way that

_____

[2] Even if the Government did adduce such proof, the Court is skeptical that such a claim would be criminal in nature – as opposed to a civil violation of Delaware corporate governance law.  After all, the 10-K would still have disclosed major material aspects of the transaction, including its cost to shareholders ($25,000 a month), and the supposed benefits received (use of Mr. Brooks' apartment, fulfillment of the terms of his compensation agreement).

7

companies routinely "offset" an employee's share of health insurance premiums from take home pay, by deducting the applicable sum from the employee's paycheck.

2.   The Cablevision Bill Evidence Is Not Probative

The Government also argues that the Cablevision bill evidence was properly introduced to foreclose Mr. Brooks from arguing that they were legitimate business expenses. To that end, the Government argues that this evidence forced Mr. Brooks to concede the bills' personal nature, thereby reducing the offsets Mr. Brooks could legitimately claim. The Court agrees that, ex ante, the bills may have had legitimate (if limited) probative value for this purpose. But Mr. Brooks' concession that the bills were personal has negated this probative value. And the bills remain potentially prejudicial in two respects. First, as the Court has previously discussed, the bills indicate that Mr. Brooks purchased numerous adult movies. Second, and more importantly, the bills serve the very real risk of confusing the jury. If the bills remain in evidence, the jury might wrongly assume that they constitute evidence of Mr. Brooks' undisclosed and unauthorized compensation. But, unlike other evidence regarding Mr. Brooks' personal expenses, they do not. Thus, the jury should not use them to weigh Mr. Brooks' guilt.

## CONCLUSION

The Government's motion for reconsideration is DENIED.


SO ORDERED.


                    /s/_____
                Joanna Seybert, U.S.D.J.

Dated:    Central Islip, New York
          May 11, 2010