CONFIDENTIAL TREATMENT
REQUESTED BY DHB INDUSTRIES, INC.

# UNITE!

| 1710 BROADWAY | TEL 212 265-7000
| N.Y, N.Y. 10019-5299 | FAX 212 265-3415

June 11, 2003

S. Philip Neri
SEC Complaint Center
Securities Exchange Commission
450 Fifth Street, N.W.
Washington, D.C. 20549

   Re: DHB Industries, Inc.
      HO-902344

Dear Mr. Neri:

We are writing to alert the Commission to what we believe to be further violations of securities laws committed by DHB Industries, Inc. ("DHB"). We ask the Commission to consider our allegations in light of our earlier letters of complaint dated February 6, 2003 and April 4, 2003.

We have discovered the existence of Tactical Armor Products ("TAP"), an entity controlled by the family of DHB's CEO, which is an integrated part of DHB's business of manufacturing protective apparel for the military and law enforcement agencies, but which is constituted as a company separate from and independent of DHB. DHB has not disclosed the existence of this company or its related transactions in its filings with the Commission. Specifically, we allege that:

1. TAP is a related entity to DHB through common ownership and control. In its filings with the Commission, DHB has not disclosed its material relationship to TAP, in potential violation of Regulation S-K.

2. TAP and DHB conduct ongoing, undisclosed related transactions in several ways. In its filings with the Commission, DHB has not disclosed these material transactions, in possible violation of Regulation S-K and Regulation S-X.

3. TAP functions as a *de facto* subsidiary of DHB. In its filings with the Commission, DHB has not disclosed that TAP is a *de facto* subsidiary, in potential violation of Regulation S-K.

UNION OF NEEDLETRADES, INDUSTRIAL & TEXTILE EMPLOYEES, AFL-CIO,CLC     www.uniteunion.org

BRUCE RAYNOR President  EDGAR ROMNEY Secretary-Treasurer  EDWARD W. CLARK, JR. Executive Vice President  WILLIAM LEE Executive Vice President

VICE PRESIDENTS JOHN ALLERUZZI ... ... NOEL BEASLEY ERNEST BENNETT HAROLD L BOCK GARY BONADONNA CLAYOLA BROWN MAY Y CHEN SUSAN COWELL
AGNELO DA COSTA ALEXANDRA DAGG ... ... LYNNE FOX JOHN GILLIS JEAN HERVEY ROBERT JORDAN CHRISTINE KERBER WILFREDO H LARANCUENT JOSEPH LOMBARDO
DAVID MELMAN GARL MEYER WARREN ... ... HARRIS RAYNOR RICHARD RUMELT LYNN TALBOTT CRISTINA VAZQUEZ PAUL WINSLOW  JAY MAZUR, PRESIDENT EMERITUS

CONFIDENTIAL TREATMENT
REQUESTED BY DHB INDUSTRIES, INC.

S. Philip Neri
June 11, 2003
Page -2-

We call the Commission's attention to the fact that David H. Brooks, DHB's Chairman of
the Board, CEO and majority shareholder, has "a history of securities law violations," in
the words of the SEC.[1] Brooks is party to a federal injunction and a consent decree
relating to past alleged insider-trading violations.[2]

As disclosed in its filings with the Commission, DHB's core business is the manufacture
and sale of body armor products.[3] DHB operates through its wholly-owned subsidiaries
Protective Apparel Corporation of America ("PACA"), Point Blank Body Armor ("Point
Blank") and NDL Products ("NDL"). DHB has failed to disclose that it also operates its
core business through TAP.

**1. DHB has not disclosed that Tactical Armor Products and DHB are related
through common ownership and control, in potential violation of its requirements
under Regulation S-K**

TAP is related to DHB through common ownership and/or control, and common
management. Three key figures embody this common ownership and control: Terry
Brooks, the wife of DHB's CEO David Brooks; Jeffrey Brooks, the brother of DHB's
CEO David Brooks; and Dawn Schlegel, the current DHB Chief Financial Officer. Each
owns substantial equity in DHB, and appears to be an owner and/or controlling figure of
TAP.

Terry Brooks is TAP's owner. Terry Brooks' ownership stake in TAP is noted by DHB in
one of its material contracts with the federal government (Attachment 1, page 57). In
addition, according to TAP's disclosures to Dun & Bradstreet, the "business [was] started
[in] 2000 by Terry Brooks. 100% of capital stock is owned by officers." The only officer
listed by D&B is the President, Terry Brooks (Attachment 2, page 6). Terry Brooks is
also registered with the US government's Small Business Administration as TAP's
President (Attachment 3).[4]

Terry Brooks owns 7,557,292 shares of DHB, according to DHB's filings with the
Commission.[5] Her stake amounts to 18.7% of DHB's 40.4 million outstanding shares as

---

[1] *In the Matter of the Application of DHB Capital Group, Inc., for Review of Action Taken by the National
Association of Securities Dealers, Inc.*, Securities Exchange Act Release 34-37069,
http://www.sec.gov/litigation/opinions/34-37069.txt).
[2] The injunctive complaint *SEC v. Lee A. Haddad, Andrew Cohen, Jeffrey Brooks Securities Inc., Jeffrey
Brooks, and David Brooks* Litigation Release No. 13473, 1992 SEC LEXIS 3294, December 17, 1992; the
consent decree: *Jeffrey Brooks Securities, Inc. Jeffrey Brooks, and David Brooks, Respondents*, Securities
Exchange Act Release No. 31657, 1992 SEC LEXIS 3340, December 23, 1992.
[3] DHB is constituted as a holding company comprised of two "groups": the DHB Armor Group, which
manufactures and distributes body armor and which includes three subsidiaries (Point Blank Body Armor,
Point Blank Body Armor International, and Protective Apparel Corporation of America); and the DHB
Sports Group, which manufactures and distributes athletic apparel and includes one subsidiary, NDL
Products. In 2002, approximately 96 percent of DHB's total revenues derived from the sales of the Armor
Group subsidiaries, according to its most recent Form 10-K filing.
[4] According to corporate filings with the Tennessee Secretary of State, Terry Brooks is also TAP's
registered agent. (Attachment 4).
[5] According to DHB's most recent Form 10-K filing, Terry Brooks owns 3,057,292 shares and owns
another 4,500,000 shares as custodian for the Brooks' minor children, for a total of 7,557,292 shares (see

CONFIDENTIAL TREATMENT
REQUESTED BY DHB INDUSTRIES, INC.

S. Philip Neri
June 11, 2003
Page -3-

of March 1, 2003. Terry Brooks' holdings account for 37% of David Brooks' total equity of 20,469,351 shares, according to disclosures provided in DHB's most recent Form 10-K filings.

Checks drawn on bank accounts registered to TAP have been used to pay personal debts accrued by David and/or Terry Brooks in the course of their horse racing activities. According to correspondence obtained from the New Jersey Racing Commission, Terry Brooks signed bank checks on a Tactical Armor Products account that was used to pay the Brookses' horse racing debts of $5,207.36 in the autumn of 2001 (Attachment 5).

Dawn Schlegel, the current CFO of DHB may be involved in the administration of TAP. The source of TAP's financial disclosures to Dun & Bradstreet was "submitted by Dawn Schlegel" (Attachment 2, page 7). Dawn Schlegel's equity interest in DHB includes 205,000 shares, which may be acquired under currently exercisable warrants according to DHB's most recent Form 10-K filing.

Jeffrey Brooks, David Brooks' brother, may be a controlling figure at TAP. He is listed as the contact person on TAP's website (Attachment 6); in addition, TAP's website is registered to his name, according to the Internet Register (Attachment 6). According to DHB's Form DEF 14A filing of March 23, 2001, Jeffrey Brooks was the beneficial owner of 1,595,758 shares in DHB, or 4% of outstanding equity. Jeffrey Brooks shares David Brooks' history of securities violations, as the owner of the firm whose alleged insider trading violations prompted the SEC's consent decree and the federal injunction referenced above.[6]

The link between DHB's and TAP's ownership and control structures is underscored by the fact that TAP's owner and managers apparently use DHB facilities to administer TAP. According to documents filed with the Tennessee Secretary of State, TAP's mailing address is located at 555 Westbury Avenue, Carle Place, New York 11514, which is the same address as DHB's corporate headquarters (Attachment 4). According to the US government's Small Business Administration, TAP's contact number is (516) 997-1155, which dials into DHB's corporate headquarters (Attachment 7).

Item 404(b) of Regulation S-K requires the disclosure of "certain business relationships" between a director of a public company and any entity that is owned or controlled by a director of the public company and his immediate family and that is party to transactions with the public company above certain amounts.

DHB has not disclosed its relationships with TAP, which is an entity controlled by the members of the immediate family of DHB's Chairman and CEO, in its filings with the Commission, as it may be required to do so under Item 404(b) of Regulation S-K.

---

DHB Form 10-K, March 31, 2003, Item 12 "Security Ownership Of Certain Beneficial Owners And Management").

[6] The injunction complaint: *SEC v. Lee A. Haddad, Andrew Cohen, Jeffrey Brooks Securities Inc., Jeffrey Brooks, and David Brooks* Litigation Release No. 13473, 1992 SEC LEXIS 3294, December 17, 1992; the consent decree: *Jeffrey Brooks Securities, Inc, Jeffrey Brooks, and David Brooks, Respondents,* Securities Exchange Act Release No. 31657, 1992 SEC LEXIS 3340, December 23, 1992.

CONFIDENTIAL TREATMENT
REQUESTED BY DHB INDUSTRIES, INC.

S. Philip Neri
June 11, 2003
Page -4-

### 2. DHB has failed to disclose its ongoing related transactions with Tactical Armor Products, in potential violation of the requirements of Regulation S-K.

TAP conducts undisclosed transactions with DHB in at least the following three ways: a) through the occupation of a building leased by DHB and inter-related operations with DHB's subsidiary PACA; b) as a party to DHB's material contracts with the federal government; and, c) as a supplier to DHB's subsidiaries.

a) TAP and DHB transact with each other through TAP's occupation of a building leased by DHB and through inter-related operations with DHB subsidiary PACA.

TAP operates out of a facility leased by DHB for its PACA subsidiary. According to filings with the Tennessee Secretary of State, TAP's registered address, at 179 Mine Lane, Jacksboro, Tennessee 37757, is the same as the address of DHB's subsidiary Protective Apparel Corporation of America (PACA) (Attachment 4). DHB rents 60,060 square feet in a manufacturing facility for PACA at a base rent of $120,120 per year, pursuant to a Lease Agreement entered into on April 15, 2001 and disclosed in DHB's Form 10-K filing of March 30, 2001 (Attachment 8).

The interrelatedness of the two entities was depicted in a news broadcast of April 8, 2003 on WBIR (Knoxville, TN). The news broadcast notes that the two companies, which "specialize in body armor," "share a building" where "close to 300 people" are employed. The broadcast presents images of production inside the facility:

"On one side of the building [TAP is] cranking out 15,000 ceramic plates to slip inside vests... on the other side, workers [for PACA] are putting together 60,000 yokes and collars that will become part of soldiers' vests."[7]

Records on file with the Campbell County Tax Assessor indicate that the total size of the building is 60,060 square feet (Attachment 9). In other words, DHB leases the entire facility, in which TAP carries out manufacturing operations. DHB has not disclosed any lease arrangement to which TAP is a party or whether PACA or DHB is subsidizing TAP's occupancy of the facility.

b) TAP transacts with DHB as a party to one of DHB's material contracts with the federal government:

TAP is party to at least one of DHB's material contracts with the federal government. The contract in question, number SP0100-01-R-4019 and administered by the Defense Supply Center in Philadelphia, is for the manufacture of military coveralls (Attachment 1). DHB has disclosed the value of the contract at over $11 million (Attachment 10). According to the contract, which we have obtained through the FOIA, TAP is listed as a

---

[7] The news broadcast can be viewed online at: http://www.pacabodyarmor.com/video/-PACA_DSL.WMV.

CONFIDENTIAL TREATMENT
REQUESTED BY DHB INDUSTRIES, INC.

S. Philip Neri
June 11, 2003
Page -5-

"place of performance" on the contract, responsible for 40% of the assembly of the coverall contract; DHB subsidiaries NDL Products and Point Blank account for the remaining 60% (see Attachment 1, page 57).

TAP recently completed a $6 million contract for the Pentagon to manufacture 15,000 ceramic plates for Interceptor Body Armor, according to a Scripps Howard News Service report of April 15, 2003 (Attachment 11). DHB is the sole company that manufactures the Interceptor and was the recipient of a 90-day contract for $20 million from the Pentagon to manufacture the Interceptor, according to the article.

<u>c) TAP transacts with DHB by functioning as a supplier to DHB subsidiaries:</u>

DHB subsidiaries PACA and Point Blank market and distribute body armor products manufactured by TAP. Protective Apparel Corporation of America, which shares a production facility with TAP, advertises the distribution of TAP products in promotional materials published on PACA's website, advertising TAP brands "TAP 433," "TAP 434," and "TAP 433 Lightweight" (Attachment 12).

According to its website and "Fast-Trak" sales brochures, Point Blank sells several types of "TAP" brand hard armor plates, including TAP Level III and TAP Level IV (Attachment 13). Point Blank's Retail Price Lists posted by the states of Florida and Colorado advertise that Point Blank retails and distributes Tactical Armor Plates (Attachment 14).

In addition to these marketing and distribution relationships, TAP is a supplier to DHB on DHB's coveralls contract with the federal government, as detailed above.

We have reason to believe that these transactions exceed $60,000. TAP's share of the $11 million coveralls contract, for which it performs 40% of the assembly, should easily exceed $60,000. To this must be added TAP's share of the rental value of the 179 Mine Lane property which DHB leases for PACA, plus any payments from DHB subsidiaries PACA and Point Blank to TAP as a supplier of tactical armor plates.

Item 404(a) of Regulation S-K, Certain Relationships and Related Transactions, states:

> "Describe briefly any transaction, or series of similar transactions, since the beginning of the registrant's last fiscal year, or any currently proposed transaction, or series of similar transactions, to which the registrant or any of its subsidiaries was or is to be a party, in which the amount involved exceeds $60,000 and in which any of the following persons had, or will have, a direct or indirect material interest, naming such person and indicating the person's relationship to the registrant, the nature of such person's interest in the transaction(s), the amount of such transaction(s) and, where practicable, the amount of such person's interest in the transaction(s):
>
> 1. Any director or executive officer of the registrant;
>
> …

S. Philip Neri
June 11, 2003
Page -6-

CONFIDENTIAL TREATMENT
REQUESTED BY DHB INDUSTRIES, INC.

4.   Any member of the immediate family of any of the foregoing persons."

According to this Regulation, a person's immediate family includes "such person's spouse . . . [and] siblings" (Instructions to Paragraph (a) of Item 404).

In its filings with the Commission, DHB has not disclosed its related transactions with Tactical Armor Products, which is owned and controlled by DHB directors and members of the immediate family of DHB CEO David Brooks, including transactions which we have reason to believe may exceed $60,000 per year.

Rule 4-08(k) of Regulation S-X states:

"Related party transactions should be identified and the amounts stated on the face of the balance sheet, income statement, or statement of cash flows."

DHB has not identified its related transactions with TAP nor has DHB disclosed these transactions on its balance sheet, income statement, or statement of cash flows, as Rule 4-08(k) of Regulation S-X may require.

**3. We have reason to believe that TAP may be a *de facto* subsidiary of DHB; DHB has not disclosed this fact, in potential violation of Regulation S-K.**

If TAP and DHB are indeed related through the above transactions and the mutual ownership and control, then we have reason to suspect that TAP may function as a *de facto* subsidiary of DHB.

Federal securities laws contain identical definitions of the term "subsidiary" in Rule 405 of Regulation C under the Securities Act of 1933 and in Rule 12b-2 of Regulation 12B under Securities Exchange Act of 1924: "A 'subsidiary' of a specified person is an affiliate controlled by such person directly, or indirectly through one or more intermediaries." These same rules note: "An 'affiliate' of, or a person 'affiliated' with, a specified person, is a person that directly, or indirectly through one or more intermediaries, controls, or is controlled by, or is under common control with, the person specified."

As noted above, Terry Brooks, a major DHB shareholder and wife of DHB CEO David Brooks, is TAP's owner and president.  TAP's mailing address is DHB's corporate headquarters, and evidence suggests that Jeffrey Brooks, David's brother, and Dawn Schlegel, DHB's CFO, are part of TAP's management team.

Item 101 of Regulation S-K, Description of Business, states:

"Describe the general development of the business of the registrant, its subsidiaries and any predecessor(s) during the past five years, or such shorter period as the registrant may have been engaged in business."

CONFIDENTIAL TREATMENT
REQUESTED BY DHB INDUSTRIES, INC.

*S. Philip Neri*
*June 11, 2003*
*Page -7-*

In its filings with the Commission, DHB has failed to describe the business activities of TAP as its likely subsidiary, in potential violation of its requirements under Regulation S-K.

Rule 13a-15(b) under the Securities Exchange Act of 1934, Issuer's Disclosure Controls and Procedures Related to Preparation of Required Reports, states:

> "Every issuer that has a class of securities registered pursuant to section 12 of the Act, other than an Asset-Backed Issuer (as defined in Rule 13a-14(g)), a small business investment company registered on Form N-5 (§ § 239.24 and 274.5 of this chapter), or a unit investment trust as defined by Section 4(2) of the Investment Company Act of 1940, must maintain disclosure controls and procedures (as defined in Rule 13a-14(c)). Within the 90-day period prior to the filing date of each report requiring certification under Rule 13a-14 and Rule 30a-2, an evaluation must be carried out under the supervision and with the participation of the issuer's management, including the issuer's principal executive officer or officers and principal financial officer or officers, or persons performing similar functions, of the effectiveness of the design and operation of the issuer's disclosure controls and procedures."

On its most recent Form 10-K filing with the Commission, DHB disclosed that its Chief Executive Officer, David Brooks, and its Chief Financial Officer, Dawn Schlegel, carried out an evaluation of the effectiveness of the company's disclosure controls and procedures as defined in Rules 13a-14 and 15d-14 of the Exchange Act: "Based upon that evaluation, the Chief Executive Officer and Chief Financial Officer concluded that, subject to the inherent limitations described below, the Company's disclosure controls and procedures are effective in timely alerting them to material information relating to the Company (including its consolidated subsidiaries) required to be included in the Company's periodic Securities and Exchange Commission filings" (DHB Form 10-K filing, March 31, 2003, Item 14).

DHB's failure to disclose its ongoing relationship with TAP, its ongoing related transactions with TAP, and TAP's composition as a *de facto* DHB subsidiary may indicate fatal deficiencies in DHB's disclosure controls and procedures, rendering DHB officers in potential violation of this rule.

DHB's failure to disclose the existence of TAP, its related transactions with TAP, and TAP's composition as a *de facto* subsidiary of DHB is material because a reasonable investor would consider them important to making an investment decision.

## ACTIONS SOUGHT:

We request that the Commission examine these matters in addition to the matters we brought to the Commission's attention in our previous letters of complaint against DHB Industries. We ask that the Commission investigate DHB's possible violations of the

CONFIDENTIAL TREATMENT
REQUESTED BY DHB INDUSTRIES, INC.

S. Philip Neri
June 11, 2003
Page -8-

disclosure requirements of Regulation S-K, Regulation S-X, and Rule 13a. If the SEC
finds that DHB has been in violation of its rules or regulations, we ask that the SEC
require DHB to disclose its related transactions with Tactical Armor Products and any
other related entities in its upcoming filings with the Commission, including disclosure of
the transactions in its financial statements. We also request that the Commission require
DHB to revise its evaluation of its disclosure controls and procedures. We ask that the
Commission initiate proceedings against DHB and its officers and controlling figures
named above: Terry Brooks, Jeffrey Brooks and Dawn Schlegel. In addition, we request
the remedies proposed in our earlier letters of complaint:

- that the SEC require DHB to comply with rules requiring disclosure of material
  legal proceedings;

- that the SEC require DHB to comply with SEC rules requiring prompt disclosure
  of material events;

- that the SEC require DHB to specify the nature of the non-salary compensation
  payments made to David Brooks at more than six times his normal salary;

- that the SEC require DHB to correct its disclosures regarding the self-dealing
  lease agreement; and

- if it is determined that violations of SEC laws, rules, or regulations have occurred,
  that the SEC permanently bar and enjoin David H. Brooks from serving as an
  officer or director of DHB or any other public company.

If we can be of any further assistance, please do not hesitate to contact me.

Very Truly Yours,

David Prouty
General Counsel

cc:    The Honorable Charles E. Schumer, U.S. Senate
       Eliot Spitzer, Attorney General of the State of New York
       Rudi Prescod, Surveillance Liaison, American Stock Exchange
       Damon Silvers, Associate General Counsel, AFL-CIO