```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------X
UNITED STATES OF AMERICA,

          -against-
                                        MEMORANDUM AND ORDER
                                        06-CR-0550 (JS)

SANDRA HATFIELD, DAVID H. BROOKS,
PATRICIA LENNEX,

                    Defendants.
------------------------------------X
APPEARANCES:
For Government:      Richard Thomas Lunger, Jr., Esq.
                     Christopher Allen Ott, Esq.
                     Christopher Charles Caffarone, Esq.
                     James Halleron Knapp, Esq.
                     James M. Miskiewicz, Esq.
                     United States Attorneys Office
                     610 Federal Plaza
                     Central Islip, NY 11722-4454
For Defendant:

David Brooks         John C. Meringolo, Esq.
                     Meringolo and Associates, P.C.
                     1790 Broadway, Suite 1501
                     New York, NY 10019

                     Zaki I. Tamir, Esq.
                     Gofer Tamir and Assoc.
                     55 Broad Street
                     New York, NY 10004

                     James M. LaRossa, Esq.
                     240 West End Avenue
                     New York, NY 10023

                     Kenneth Ravenell, Esq.
                     William H. Murphy, Jr., Esq.
                     The Murphy Firm
                     1 South Street, 23rd Floor
                     Baltimore, MD 21202

                     Richard Ware Levitt, Esq.
                     Yvonne Shivers, Esq.
                     Law Offices of Richard W. Levitt
                     148 E. 78th Street
                     New York, NY 10021
```

Roger V. Archibald, Esq.
William C. Thompson, Esq.
16 Court Street
Brooklyn, NY 11241

SEYBERT, District Judge:

Pending before the Court is Defendant David H. Brooks' FED. R. CRIM. P. 29(a) motion (Docket No. 1033) for a judgment of acquittal on Counts Three Through Eleven and Fifteen of the Superseding Indictment. For the following reasons, this motion is GRANTED IN PART AND DENIED IN PART. Mr. Brooks has also moved, again, for a mistrial. (Docket No. 1158). That motion is DENIED.

<u>BACKGROUND</u>

Mr. Brooks is on trial for: (1) securities fraud and conspiracy to commit securities fraud (Counts One and Two); (2) conspiracy to commit mail and wire fraud (Count Three); (3) mail and wire fraud (Counts Four and Five); (4) insider trading (Counts Six through Eleven); (5) conspiracy to obstruct justice and obstruction of justice (Counts Fifteen and Sixteen); and (6) material misstatements to auditors (Count Seventeen). The Government has rested. Mr. Brooks then filed this motion, contending that the Government's evidence is insufficient to convict him. In the alternative, Mr. Brooks seeks to strike any allegations in the Indictment that the Government did not sufficiently prove.

## DISCUSSION

I. <u>Standard of Review</u>

Federal Rule of Criminal Procedure 29 provides that, on a defendant's motion, the trial court "must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." A Rule 29(a) motion focuses upon the sufficiency of the Government's evidence in its case in chief. "Under Rule 29, a district court will grant a motion to enter a judgment of acquittal on grounds of insufficient evidence if it concludes that no rational trier of fact could have found the defendant guilty beyond a reasonable doubt." <u>United States v. Jackson</u>, 335 F.3d 170, 180 (2d Cir. 2003). Thus, "the court may enter a judgment of acquittal only if the evidence that the defendant committed the crime is non-existent or so meager that no reasonable jury could find guilt beyond a reasonable doubt." <u>United States v. Guadagna</u>, 183 F.3d 122, 130 (2d Cir. 1999) (internal citations and quotations omitted). The Court must view the evidence "in the light most favorable to the Government and all permissible inferences drawn in the Government's favor." <u>Jackson</u>, 335 F.3d at 180.

II. <u>Insider Trading</u>

Counts Six through Eleven charge Mr. Brooks with insider trading in violation of 18 U.S.C. § 1348. The Government need only prove one of § 1348's two subsections. <u>United States v. Mahaffy</u>,

3

No. 05-CR-613, 2006 WL 2224518, at *12 (E.D.N.Y. Aug. 2, 2006). Under § 1348(1), the Government must provide sufficient evidence to establish that Mr. Brooks had (1) "fraudulent intent"; (2) "a scheme or artifice to defraud"; and (3) "a nexus with a security." Id. Alternatively, pursuant to § 1348(2), the Government can show that Mr. Brooks executed: (1) a scheme or artifice; (2) "to obtain, by means of false or fraudulent pretenses, representations, or promises, any money or property;" while possessing (3) fraudulent intent. 18 U.S.C. § 1348; see also Mahaffy, 2006 WL 2224518, at *16 ("[P]recedent compels this Court to read into 18 U.S.C. § 1348 the well-established requirement of fraudulent intent, which is requisite to a conviction under the other federal fraud statutes."). As this Court has already held here, the Government must also show that the false and misleading statements, disseminated as a result of Mr. Brooks' actions, were material. Order dated January 25, 2010, at 4.

Mr. Brooks raises several arguments, discussed below, for why the Government did not sufficiently evidence that Mr. Brooks illegally engaged in insider trading. These arguments are mostly unavailing.

A. DHB's Relationship to TAP

Mr. Brooks argues that the Government has adduced insufficient evidence concerning DHB Industries, Inc.'s ("DHB") disclosure of its relationship to Tactical Armored Products, Inc.

4

("TAP") to support convicting him of insider trading. In this regard, Mr. Brooks makes several arguments. But each of them are without merit.

Mr. Brooks first contends that DHB fully disclosed its relationship with TAP in July 2003, long before his stock sales. In this regard, Mr. Brooks notes that DHB's Amended 2002 10-K, filed in July 2003, disclosed: (1) that DHB purchased goods from TAP between 2000-2002; (2) that DHB leased space to TAP in its Jacksboro, Tennessee facility; and (3) that Terry Brooks, Mr. Brooks' wife, owned TAP. But the Government offered evidence that the Amended 10-K did not disclose, among other things: (1) that Mr. Brooks, and not his wife, controlled TAP, including setting TAP's prices; (2) that DHB paid TAP employees' salaries and bonuses; (3) that Ms. Schlegel, DHB's CFO, oversaw TAP's finances; and (4) that TAP earned significantly higher gross profit margins than DHB itself, including margins as high as 54.3%. Tr. 5484, 5486-88, 5578-79, 5599, 5650-52, 5907, 5955; GX 6198.

Mr. Brooks argues that these non-disclosures do not support an insider trading charge, because the Statement of Financial Accounting Standards does not expressly require their disclosure. But, for securities fraud purposes, the relevant inquiry is whether an omission is <u>material</u> under federal securities law, not whether an accounting doctrine explicitly requires its disclosure. <u>See</u> Docket No. 1018 at 5 ("[c]ompliance with

5

applicable accounting standards, such as GAAP, 'neither establishes nor shields guilt in a securities fraud case,'" citing United States v. Rigas, 490 F.3d 208, 220 (2d Cir. 2007)). And materiality is generally a jury question. See Rigas, 490 F.3d at 220; see also United States v. Gaudin, 515 U.S. 506, 522-23 (1995).[1]

Here, the jury could rationally find that a reasonable investor would have considered these omitted facts material.[2] For instance, analyst Christopher Krueger testified that he would have considered it important to know that Mr. Brooks set TAP's prices,

---

[1] That being said, misstatements or omissions can be so "trivial" that they are immaterial as a matter of law. See, generally, Ganino v. Citizens Utilities Co., 228 F.3d 154, 162 (2d Cir. 2000). Based on the record before it, the Court finds that DHB's omissions concerning TAP's payment of Mr. Brooks' personal expenses falls into this category. TAP was a private company. And the Government adduced no evidence to suggest that DHB's investors cared how Mr. and Mrs. Brooks spent TAP's profits, whether by declaring dividends to themselves or by using these funds to pay their personal expenses. See U.S. v. Hatfield, 06-CR-550, 2010 WL 1930253, *2 (E.D.N.Y. 2010) (not probative how Mr. Brooks spent his rent checks from DHB). On the contrary, the Government's own witness, Mr. Krueger, testified that "[i]f the price is fair, TAP could do whatever [it] want[ed]" with the profits. Tr. 12886. But, although TAP's payment of Mr. Brooks' personal expenses cannot serve as a direct predicate for the Superseding Indictment's charges (including insider trading), this evidence remains admissible and probative for another purpose: showing that Mr. Brooks controlled TAP. And, as noted above, a rational jury could find that DHB's failure to disclose Mr. Brooks' alleged control was material.

[2] 17 C.F.R. §229.404, Instruction 1 to Paragraph (a) of Item 404 ("The materiality of any interest is to be determined on the basis of the significance of the information to investors in light of all the circumstances of the particular case.").

6

because this presented a "conflict" that might impact whether shareholders "are getting the best decisions – the best decision making possible from management." Tr. 12880. Mr. Krueger further testified that it would have been "significant" to know that DHB paid TAP's payroll, because that reflected on whether DHB was "paying more than they should for what TAP is doing for them." Id. And Mr. Krueger testified that he would want to know if TAP earned "exorbitant" profits. Tr. 12886.

Mr. Brooks also contends that the Government did not adduce sufficient evidence indicating that he or DHB <u>intentionally</u> failed to disclose DHB's relationship with TAP. To this end, Mr. Brooks points to evidence suggesting that DHB's nondisclosures were inadvertent. But Mr. Brooks' argument is unavailing. The record contains more than enough evidence for the jury to infer that Mr. Brooks knowingly facilitated DHB's nondisclosures concerning TAP. Among other things, the Government evidences that: (1) in 2002, Mr. Brooks, Ms. Hatfield and Ms. Schlegal discussed whether to include TAP on a list of DHB's top vendors; (2) Mr. Brooks engineered a $4 million "sham" transaction with his wife, Terry Brooks, to prevent DHB's auditors from asking questions about TAP; (3) Mr. Brooks conspired with Ms. Hatfield and Ms. Schlegel to submit a list of DHB's top vendors for an audit that omitted TAP; (4) to respond to a likely SEC inquiry, DHB, with Mr. Brooks' input, prepared binders concerning its TAP relationship that contained significant

7

misrepresentations and omissions, including: (i) not disclosing that DHB paid some TAP employees' salaries; and (ii) forged and backdated promissory notes attributed to TAP; and (iii) omitting TAP insurance policies that DHB paid for. Tr. 5515, 5770, 5889, 5904, 5905-06, 5921-22, 5954-5955, 10394-99, 12520. For this motion's purposes, it is irrelevant that other witnesses, such as Rhonda Graves, supposedly exculpate Mr. Brooks. This is because "determinations of credibility or relative weight of the evidence" must be left for the jury. U.S. v. Hardwick, 523 F.3d 94, 100 (2d Cir. 2008) (internal citations and quotations omitted).

B. <u>Reclassification of Research and Development Expenses</u>

Mr. Brooks also argues that the Government's evidence concerning the reclassification of expenses as research and development does not support a verdict of guilty for insider trading. The Court disagrees. That being said, as of now, the Court finds that the Government's opposition papers justify only a more limited theory than the Superseding Indictment alleges.

Construing the evidence in the light most favorable to the Government, a reasonable jury could find that: (1) "one time" Mr. Brooks conspired with Ms. Hatfield and Ms. Schlegel to increase the R&D booked, for the purpose of inflating DHB's gross profit margins; and (2) another time, Mr. Brooks conspired with Ms. Hatfield and Ms. Schlegel to <u>not</u> book R&D that DHB actually conducted, so as to not "highlight" a quarter where DHB's "gross

8

profit was higher than normal." Tr. 5803-04; 5809. This supports the Superseding Indictment's allegations that Mr. Brooks knowingly engaged in a scheme that twice reclassified R&D for the purpose of keeping DHB's gross profit margins at the 27-28% level. See Superseding Indictment ¶¶ 19, 21. And a reasonable jury could further find that these reclassifications were material. Among other things, Mr. Krueger testified concerning the importance of (1) DHB's gross profit margin; (2) the accuracy of DHB's financial figures; and (3) the level of R&D that DHB performed. See Tr. 12847, 12855, 12870, 12901, 12952.[3]

The Superseding Indictment's allegations that Mr. Brooks otherwise engaged in a scheme to "fraudulently reclassif[y]" expenses as R&D might not fare as well. The Government cites to no

---

[3] Relying on In re Hudson Tech., Inc. Sec. Litig., No. 98-CV-1616, 1999 WL 767418, at *12 (S.D.N.Y. Sept. 28, 1999), Mr. Brooks argues that DHB's alleged misstatements concerning gross profit margin are immaterial because the overstatements did not affect net earnings. But Mr. Brooks' reliance on In re Hudson Tech. is misplaced. Under current Second Circuit law, materiality depends upon "both quantitative and qualitative factors." ECA, Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase Co., 553 F.3d 187, 197 (2d Cir. 2009) (citing Ganino, 228 F.3d at 163; SEC Staff Accounting Bulletin No. 99, 64 Fed.Reg. 45150, 45150-52 (1999)). If "qualitative factors" are present, misstatements that have little or no effect on net earnings can still be material. Id. And these qualitative factors include considerations such as the "significance of the misstatement in relation to the company's operations" and "management's expectation that the misstatement will result in a significant market reaction." Id. Here, construing the evidence in the light most favorable to the Government, a reasonable jury could find that many of the "qualitative factors" recognized in SEC SAB No. 99 are present, thereby rendering DHB's misstatement of its gross profit margin material.

9

evidence suggesting that DHB did not, in fact, spend approximately 3% of its cost of goods on research and development – the amount Ms. Hatfield told Ms. Schlegel to reclassify as R&D.  Tr. 5865.  And there is ample evidence that DHB performed at least <u>some</u> R&D.  So, even construed in the light most favorable to the Government, the cited evidence does not suggest that: (1) Ms. Hatfield's 3% reclassification instructions were <u>fraudulent</u>; (2) were <u>fraudulent</u> in the amounts the Superseding Indictment specifies; and that (3) Mr. Brooks knew they were <u>fraudulent</u>.  Rather, at most, the cited evidence suggests that Mr. Brooks acted negligently in enabling Ms. Hatfield and Ms. Schlegel to report R&D figures based on what Ms. Hatfield "kn[ew]" but without "any inventory system that tracks it from beginning to end." Tr. 5796-97.

Thus, although a reasonable jury could find Mr. Brooks guilty of insider trading based on DHB's failure to disclose <u>two</u> incidents where DHB reclassified the costs of good sold as R&D to achieve a desired profit margin (supporting Superseding Indictment ¶¶ 19-21), the Government's opposition papers do not support finding him guilty of the larger <u>fraudulent</u> reclassification scheme that the Superseding Indictment alleges (Superseding Indictment ¶ 22).

The Court does not, however, have an encyclopedic recollection of this case's entire record.  So there may be evidence supporting Mr. Brooks' knowledge of, and involvement in,

10

a larger fraudulent scheme (beyond sloppy recordkeeping). The Government, however, failed to properly present this evidence in opposing Mr. Brooks' motion. Because the Government lacks any effective way to remedy a Court error in this regard, the Court exercises its discretion to not strike ¶ 22 at this time. Instead, the Court ORDERS the Government to SHOW CAUSE by July 11, 2010 why it should not strike ¶ 22, at least as to Mr. Brooks. Mr. Brooks may respond before the trial resumes on July 14, 2010. No replies are necessary.

C.  Overvaluation of Inventory

Mr. Brooks also argues that the Government's evidence concerning DHB's overvaluation of inventory is insufficient to support finding him guilty for insider trading. Specifically, Brooks contends that: (1) there is no evidence that the Interceptor vest inventory was overvalued between 2003-2005; (2) if the Interceptor vest inventory was overvalued, there is no evidence "that information was known with respect to 2004 before Mr. Brooks' trades were executed"; (3) Travis Brooks' testimony does not suffice to convict him; and (4) any overvaluation of inventory that took place in 2005 is irrelevant to the insider trading charges, because those counts concern Mr. Brooks' conduct in 2004. The Court addresses each of these arguments.

With respect to (1), the Government's evidence more than suffices to show that DHB overvalued its inventory from 2002

11

through Mr. Brooks' trades in 2004.  See Tr. 3271-73, 3280-85, 3287, 3291-3303.  And, at this stage, this evidence must include (3) Travis Brooks' testimony, because the jury – and not the Court – must assess his credibility and determine the relative weight of his testimony.  See U.S. v. Zhou, 428 F.3d 361, 370 (2d Cir. 2005) (internal citations and quotations omitted).

The Government's opposition did not, however, address (2).  The Government points to no testimony indicating that Mr. Brooks had <u>knowledge</u> of the allegedly overvalued inventory before his 2004 trades.  That being said, the Court exercises its discretion to not dismiss this insider trading theory right now.  Instead, the Court ORDERS the Government to SHOW CAUSE why the insider trading theory predicated on Mr. Brooks' alleged knowledge of overvalued inventory should not be dismissed.  The Government has until July 11, 2010 to respond to this Order by pointing the Court to evidence that, at a minimum, would permit a reasonable jury to infer Mr. Brooks' knowledge.  Mr. Brooks may respond before trial begins on July 14, 2010.  No replies are necessary.

The Court agrees with Mr. Brooks with respect to (4).  To the extent the Government predicates the insider trading charges on conduct post-dating Mr. Brooks' trades, that theory is not tenable.

D. <u>Looting of DHB</u>

Finally, Mr. Brooks argues that the Government's alleged "looting" evidence does not support a guilty verdict for insider

12

trading. In this regard, Mr. Brooks argues that the alleged looting was immaterial because it did not affect DHB's reported earnings and, if anything, depressed DHB's stock price. A reasonable jury could disagree. It is well-settled that information impugning management's integrity is material to shareholders.[4] Here, a reasonable jury could find that Mr. Brooks spent millions of dollars of shareholders' money on his personal expenses, without proper authorization to do so. See, e.g., Tr. 6307, GX 1510-B (showing that Brooks spent approximately $1.7 million using company checks for personal expenses that was not disclosed). This more than suffices to meet the Government's materiality burden.

Additionally, it should be noted that – at this stage – even Mr. Brooks' "looting" defense would support an insider trading conviction. Specifically, although Mr. Brooks argues that the 1997 Resolution entitled him to spend DHB money on his personal expenses, Mr. Brooks does not dispute that DHB never disclosed the full extent of his compensation to shareholders. Nor could he.

---

[4] Weisberg v. Coastal States Gas Corp., 609 F.2d 650, 655 (2d Cir. 1979) ("factual information concerning the honesty of directors in their dealings with the corporation . . . . would be material to shareholders"); In re Monster Worldwide, Inc. Sec. Litig., 251 F.R.D. 132, 139 (S.D.N.Y. 2008); In re Comverse Technology, Inc. Sec. Litig., 543 F. Supp. 2d 134, 151 (E.D.N.Y. 2008); U.S. v. Ferguson, 545 F. Supp. 2d 238, 240 (D. Conn. 2008).

DHB's amended 2002 10-K states that DHB compensated Mr. Brooks in 2002 through $643,750 in salary, as well as up to $50,000 in perquisites. See DHB Industries, Inc., Annual Report (Form 10-K Amendment #1), at 19 (July 24, 2003). But the 10-K does not disclose that Mr. Brooks charged $666,657 in personal expenses to a corporate credit card in 2002. See Tr. 6291-98, GX 1285-C at 55. And a reasonable jury could find that DHB's failure to accurately report Mr. Brooks' executive compensation was material. See In re JDN Realty Corp. Secs. Litig., 182 F. Supp. 2d 1230, 1250 (N.D. Ga. 2002) (finding that misrepresenting executive compensation in reports filed with the SEC is material).

E. Misstatements & Omissions, Taken Collectively

Even assuming arguendo that each alleged false statement or omission was not material by itself, the Government adduced sufficient information to enable a rational jury to find that these alleged false statements and omissions were material when viewed collectively. See Rombach v. Chang, 355 F.3d 164, 172 n.7 (2d Cir. 2004) (materiality inquiry requires misstatements and omissions to be "taken together and in context"). After viewing the evidence presented in the light most favorable to the Government, the Court concludes that a rational jury could convict Mr. Brooks of insider trading.

III. Conspiracy to Obstruct Justice

Mr. Brooks also argues that the evidence is insufficient to convict him of Count 15, conspiracy to obstruct justice in violation of 18 U.S.C. §§ 1512(c)(2) and 1512(k). Again, the Court disagrees. A reasonable jury could find that Mr. Brooks conspired to obstruct justice by: (1) instructing Ms. Schlegel to prepare a fraudulent schedule of his American Express charges that omitted or misclassified many of his personal expenses, and then include that schedule in a report that went to the SEC; and (2) directing Ms. Schlegel to claim authorship of a 2004 Audit Committee report that, among other things, included the fraudulent schedule. See Tr. 6291-95, 6359-61. Based on this evidence, a reasonable jury could find that Mr. Brooks and Ms. Schlegel "agreed to participate in a joint venture intended to commit an unlawful act." United States v. Hawkins, 547 F.3d 66, 71 (2d Cir. 2008) (quotations omitted). And, consequently, a rational jury could find that the Government established all of the elements for conspiracy to obstruct justice pursuant to 18 U.S.C. §§ 1512(c)(2) and 1512(k).

IV. Mail Fraud, Wire Fraud, and Conspiracy to Commit Mail and Wire Fraud

    A. Mr. Brooks' Rule 29(a) Motion

Mr. Brooks also seeks acquittal of the mail and wire fraud counts, on the grounds that these counts depend upon an "honest services" fraud theory that the Supreme Court has recently invalidated. Mr. Brooks is correct that the Government's honest

15

services fraud claims cannot survive Skilling v. U.S., 2010 WL 2518587 (2010) and Black v. U.S., 2010 WL 2518593 (2010). Thus, Mr. Brooks is acquitted of Counts 4-6 to the extent that those counts allege violations of 18 U.S.C. § 1346. This does not mean, however, that Mr. Brooks is entitled to acquittal on the mail and wire fraud counts. For the mail and wire fraud counts plead an alternate, legitimate theory: that Mr. Brooks sought to "obtain money and property from DHB, by means of materially false and fraudulent pretenses" and executed this scheme through the wires and mails. Superseding Indictment ¶¶ 92, 94, 96. Money and property fraud survives the Supreme Court's recent decisions. See, generally, Black, 2010 WL 2518593, *5; 18 U.S.C. §§ 1341, 1343.

B. Mr. Brooks' Mistrial Motion

Although acquitting him of the alleged § 1346 violations, the Court DENIES Mr. Brooks' motion for a mistrial predicated on the Skilling decision (Docket No. 1158). Mr. Brooks bases this motion on his claim that the honest services fraud evidence "infected the entire trial." Docket No. 1158 at 1. In this regard, he argues that, in light of Skilling, the Court should not have permitted the Government to introduce: (1) evidence concerning "how TAP monies were allegedly spent, including horses and many other items"; and (2) Professor Pan's testimony concerning fiduciary duties. But, as noted above, the evidence concerning TAP's expenditures (including its horse expenses) is probative of Mr.

Brooks' alleged control over TAP. See Tr. 5681-84; 5907, 5911. And Professor Pan merely provided background testimony on corporate governance. He did not opine that Mr. Brooks breached any fiduciary duties. So his testimony could hardly prejudice Mr. Brooks, and certainly not to the extent of warranting a mistrial. That being said, and solely as an extra caution, the Court instructs the Government to not argue, in summation, that Mr. Brooks breached his fiduciary duties to DHB or its shareholders.

Finally, Mr. Brooks appears to argue that any evidence concerning "self-dealing" related only to the now defunct honest services charges. Docket No. 1158 at 10. He is wrong. To the extent that Mr. Brooks' "self-dealing" was material information not disclosed to shareholders, such evidence is relevant to the securities fraud and insider trading counts. And to the extent that DHB did not properly authorize Mr. Brooks' "self-dealing," and his "self-dealing" involved the mails and/or wires, this evidence remains relevant to the mail and wire fraud counts as well, under a money or property theory. See 18 U.S.C. §§ 1341, 1343.

V. Brooks' Remaining Arguments

Brooks reargues points that he made in previous motions to this Court and asks the Court to reconsider arguments he has previously made before and lost. The Court declines to reconsider any of its past decisions.

17

<u>CONCLUSION</u>

For the foregoing reasons, Defendant Brooks' motion for a judgment of acquittal (Docket No. 1033) is GRANTED IN PART AND DENIED IN PART. All charges in the Superseding Indictment remain. However, the Government may not proceed to verdict on the following theories: (1) that Mr. Brooks and/or DHB failed to disclose material information concerning TAP's funding of Mr. Brooks' personal expenses; (2) that Mr. Brooks engaged in illegal insider trading based on any conduct or non-disclosures that post-dated his trades; and (3) that Mr. Brooks committed honest services fraud. In addition, the Government is ORDERED TO SHOW CAUSE how: (1) Mr. Brooks participated a scheme to <u>fraudulently</u> reclassify cost of good sold as R&D, except for the two specific incidents that Ms. Schlegel testified about; and how (2) Mr. Brooks <u>knew</u> about any allegedly overvalued inventory before his allegedly illegal insider trades.

Mr. Brooks' motion for a mistrial (Docket 1158) is DENIED.

SO ORDERED.

_____/s/_____
Joanna Seybert, U.S.D.J.

Dated: Central Islip, New York
July 8, 2010