```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X
UNITED STATES OF AMERICA,
                                              MEMORANDUM & ORDER
         -against-                            06-CR-0550(JS)

SANDRA HATFIELD and DAVID H. BROOKS,

                   Defendants.
----------------------------------------X
APPEARANCES
For the Government:  James Halleron Knapp, Esq.
                     Richard Thomas Lunger, Jr., Esq.
                     Christopher Charles Caffarone, Esq.
                     Christopher Allen Ott, Esq.
                     James M. Miskiewicz, Esq.
                     Kathleen Anne Nandan, Esq.
                     Marshall L. Miller, Esq.
                     United States Attorney's Office
                     Eastern District of New York
                     610 Federal Plaza
                     Central Islip, NY 11722

For Defendants:
Sandra Hatfield      Maurice H. Sercarz, Esq.
                     Roland G. Riopelle, Esq.
                     Sercarz & Riopelle
                     152 West 57th Street, 24th Floor
                     New York, NY 10019

                     W. Thomas Dillard, Esq.
                     Ritchie, Dillard & Davies, P.C.
                     606 W. Main Street, Suite 300
                     Knoxville, TN 37902

David Brooks         Kenneth Ravenell, Esq.
                     The Murphy Firm
                     One South Street, 23rd Floor
                     Baltimore, MD 21202

                     Roger V. Archibald, Esq.
                     16 Court Street, Suite 2400
                     Brooklyn, NY 11241

                     David M. Goldstein, Esq.
                     David M. Goldstein, P.A.
```

286 NE 39th Street
Miami, FL 33137

Gerald L. Shargel, Esq.
Law Office of Gerald Shargel
570 Lexington Avenue
New York, NY 10022

Ira Lee Sorkin, Esq.
Dickstein Shapiro
1177 Avenue of the Americas
New York, NY 10036

James M. LaRossa, Esq.
200 East 64th Street, Apt 14D
New York, NY 10065

Jeffrey H. Lichtman, Esq.
Law Offices of Jeffrey Lichtman
750 Lexington Ave, 15th Floor
New York, NY 10022

John C. Meringolo, Esq.
Meringolo and Associates, P.C.
375 Greenwich Street, 7th Floor
New York, NY 10013

Judd Burstein, Esq.
Judd Burstein, P.C.
1790 Broadway, Suite 1501
New York, NY 10019

Laurence S. Shtasel, Esq.
Blank Rome LLP
The Chrysler Building, One Logan Square
Philadelphia, PA 19103

Mauro Michael Wolfe, Esq.
Duane Morris LLP
1540 Broadway
New York, NY 10036

Richard Ware Levitt, Esq.
Levitt & Kaizer
40 Fulton Street, 23rd Floor
New York, NY 10038

Yvonne Shivers, Esq.
Law Offices of Richard Ware Levitt
148 East 78th Street
New York, NY 10075

Zaki I. Tamir, Esq.
Gofer Tamir and Associates
55 Broad Street, 26th Floor
New York, NY 10004

SEYBERT, District Judge:

Pending before the Court is the Government's motion for reconsideration of the Court's September 22, 2011 Memorandum and Order granting in part and denying in part the Government's motion for a preliminary order of forfeiture. For the reasons that follow, the Government's motion is GRANTED.

## BACKGROUND

The Court assumes familiarity with the facts of this case but will briefly summarize the procedural history related to the forfeiture proceedings.

After conducting protracted non-jury forfeiture proceedings in November 2010 and accepting post-hearing briefs and reply submissions through April 2011, the Court issued a Memorandum and Order on June 14, 2011 ("June Order") (Docket Entry 1455), 2011 WL 2446430, granting in part and denying in part the Government's motion to enter a preliminary order of forfeiture. The Court granted forfeiture of the assets that Defendant David Brooks ("Brooks") obtained through the unauthorized compensation scheme, denied forfeiture of the

3

$94,000 paid to WGH Consulting, and reserved judgment as to the exact dollar amount of the insider trading proceeds to be forfeited pending revised calculations and supplemental briefing.

In attempting to determine the amount of insider trading proceeds subject to forfeiture, the Court outright rejected two of the four studies (the event-based studies) presented by the Government's expert, Professor Lawrence Harris, as unreliable and criticized the remaining two studies (the discounted cash flow and P/E studies) for, inter alia, incorrectly accounting for the PACA inventory fraud, which did not occur until after Defendants' stock sales.[1]  Thus, the Court ordered Professor Harris to recalculate forfeiture using only the discounted cash flow and P/E studies and omitting the PACA inventory fraud from the calculations.  The Court stated:

> [R]ather than disregard his discounted cash flow [and P/E] analys[es], the Court instead orders the Government and Professor Harris to provide revised calculations that apply the same methodology, but do not "correct" for a PACA fraud that had yet to occur. Professor Harris may use his reasoned judgment in deciding how best to accomplish this task (i.e., considering fraud in the fourth quarter of 2003 and thus the previous four reported quarters, extrapolating financial data from the first nine months of 2004, etc).  And the Court will then use that revised analysis to order forfeiture.

---

[1] Professor Harris himself acknowledged that this was an error. (Tr. 129-31.)

4

June Order, 2011 WL 2446430, at *17, 18.

The Government submitted Professor Harris's supplemental report on July 11, 2011 ("First Supplemental Report"). These new calculations not only corrected the PACA fraud issue, as ordered by the Court, but they also incorporated additional changes that had nothing to do with the PACA fraud. While the Government submitted a short letter-brief with the First Supplemental Report, it did not address the substance or adequacy of the revised calculations at all.

Defendants submitted two oppositions to the First Supplemental Report: the first on July 15, 2011, objecting to the Court's reopening the record for a new expert report, and the second on July 27 and 29, 2011, requesting that the First Supplemental Report be stricken in its entirety for failing to comply with the Court's June Order and for incorporating unscientific assumptions. The Government was not permitted to file any reply.

On September 22, 2011, the Court dismissed the insider trading forfeiture claims ("September Order") (Docket Entry 1478), 2011 WL 4434219, stating that the Government "failed, yet again, to meet its burden of establishing ill-gotten gains by a preponderance of the evidence because Professor Harris's [First Supplemental Report] makes assumptions and

5

adjustments . . . outside the limited discretion granted to him by the Court's June 14 Order, and these revisions are based on the same type of subjective opinions that the Court rejected in refusing to consider the results of the event driven studies." September Order, 2011 WL 4434219, at *4.

The Government filed the pending motion to reconsider the September Order on October 6, 2011, which included new revised calculations ("Second Supplemental Report") that addressed the Court's criticisms in the September Order. Defendants filed their opposition on October 12, 2011 (Docket Entry 1495), and the Government filed its reply on October 20, 2011 (Docket Entry 1497).

## DISCUSSION

I. Standard of Review

Although the federal and local rules of criminal procedure do not specifically provide for motions for reconsideration, courts in this Circuit have applied Local Civil Rule 6.3 in criminal cases. See, e.g., United States v. Aleynikov, 785 F. Supp. 2d 46, 60 (S.D.N.Y. 2011); United States v. Yannotti, 457 F. Supp. 2d 385, 388-89 (S.D.N.Y. 2006).

Under this standard, a motion for reconsideration "will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked-- matters, in other words, that might reasonably be expected to

alter the conclusion reached by the court." Shrader v. CSX Transp., Inc., 70 F.3d 225, 257 (2d Cir. 1995); see also Aleynikov, 785 F. Supp. 2d at 60. "Local Rule 6.3 is narrowly construed and strictly applied so as to avoid repetitive arguments on issues that have been considered fully by the court." Yannotti, 457 F. Supp. 2d at 389 (internal quotation marks and citations omitted).

## II. Government's Arguments

The Government makes two arguments in support of its motion for reconsideration: first, that the Court erred in rejecting the First Supplemental Report; and second, that the Court erred in otherwise concluding that the Government failed to satisfy its burden. The Court will address each in turn.

### A. Rejecting the First Supplemental Report

The Court held that the First Supplemental Report failed to establish ill-gotten gains by a preponderance of the evidence because it "makes assumptions and adjustments to the discounted cash flow study outside the limited discretion granted to [Professor Harris] by the Court's June 14 Order, and th[ose] revisions [were] based on the same type of subjective opinions that the Court rejected in refusing to consider the results of the event-driven studies." September Order, 2011 WL 4434219, at *4. The Government asserts that the Court's

conclusion is based on a misreading of its June Order and the record. The Court disagrees.

First, the Government asserts that Professor Harris's decision to make changes to his calculation "not associated with the exclusion of the PACA fraud" (First Supplemental Report ¶¶ 7-8) was based on a reasonable interpretation of the September Order. The Government argues that the June Order "clearly allowed Professor Harris the discretion to draw upon his knowledge and experience as 'a well-qualified economist' with 'impeccable credentials and a distinguished economics career' in deciding how best to revise his calculations." (Gov't Recons. Mot. 4 (quoting June Order, 2011 WL 2446430, at *17).) However, this argument completely ignores the express limitation in the June Order--while Professor Harris was allowed to use his "reasoned judgment" to revise his calculations, he was limited to providing revisions that "do not 'correct' for a PACA fraud that had yet to occur." June Order, 2011 WL 2446430, at *17. The Government does not--and cannot--dispute that Professor Harris did more than that.

As the Government points out, the June Order's "thorough and thoughtful analysis of the issues" (Gov't Reply 3)

exhaustively detailed and analyzed the extensive record[2] and concluded that the assumptions and methodologies employed by Professor Harris in his discounted cash flow and P/E studies were sufficiently reasonable--except that they incorrectly calculated for the effects of the PACA fraud. So, to avoid further prolonging the already convoluted forfeiture proceedings, the Court appropriately limited the Government and Professor Harris's ability to supplement the record to correct for that one issue. The Court agrees with the Government that it too did not anticipate that it "would endeavor to reanalyze" what was "previously settled" in the June Order (Gov't Reply 3), which is why it rejected the First Supplemental Report for making changes to what was "previously settled" in the June Order.[3]

---

[2] This included five days of trial testimony, over 200 pages of post-hearing briefs and reply memoranda, and, as of the date of the June Opinion, two sets of Professor Harris's calculations.

[3] The Government also criticizes the Court's determination that these changes were also substantively unreliable. With the exception of the Court's error related to the 50% reduction to the residual return--which was included in Professor Harris's initial calculations and admittedly overlooked by the Court--the Government merely challenges the Court's interpretation of the June Order. However, "[m]erely disagreeing with the [C]ourt's analysis does not warrant reconsideration." Rozier v. Fin. Recovery Sys., Inc., No. 10-CV-3273, 2011 WL 2669617, at *2 (E.D.N.Y. July 7, 2011). Nonetheless, the Court maintains that its rejection of the changes made in the First Supplemental Report are supported by both the record and the Court's June Order.

Second, the Government asserts that the Court erred in "striking the [First Supplemental Report] without notice." (Gov't Recons. Mot. 6.) However, the cases cited by the Government are inapposite. In Vincent v. Commissioner of Social Security, 651 F.3d 299 (2d Cir. 2011), a case cited by the Government, the Second Circuit held that the district court abused its discretion when it sua sponte reduced a fee award under the Equal Access to Justice Act ("EAJA") because of issues with counsel's billing records. The Court of Appeals stated that because counsel "first learned of the district court's record-keeping concerns only when he was penalized for them in the EAJA fee order," id. at 307, "the district court should have given [him] notice of its concerns and allowed the attorney to address them," id. at 308. Here, on the other hand, the Court explained in exhaustive detail its concerns with Professor Harris' initial calculations in its June Order and provided the Government with an opportunity to address those concerns with supplemental briefing and calculations. Thus, the Government was on notice that the Court would be evaluating the sufficiency of the First Supplemental Report--whether it adequately addressed the Court's concerns and whether it was otherwise reliable. Any allegation to the contrary cannot be supported by the record.[4]

---

[4] The other cases cited by the Government similarly do not

B.  Proof of Forfeiture by a Preponderance of the Evidence

Finally, the Government argues that the Court overlooked the minimal burden required to establish forfeiture. The Court agrees.

The Court previously held that, in interpreting 18 U.S.C. § 981(a)(1)(C), only the "difference between the stock's inflated value, and what it would have sold for absent the fraud" is subject to forfeiture. 2010 WL 1685826, at *3 (E.D.N.Y. Apr. 21, 2010). The Court has been grappling with, as the Government aptly states, "the extremely difficult task . . . [of] quantifying price inflation attributable to an undisclosed fraud." (Gov't Recons. Mot. 8.) Although, to date, the Government has failed to provide a specific number based on calculations that the Court finds reliable, "[t]he calculation of forfeiture amounts is not an exact science." United States v. Treacy, 639 F.3d 32, 48 (2d Cir. 2011). "The court need not

---

support its argument. In re Harris, 464 F.3d 263, 270-71 (2d Cir. 2006) (vacating and remanding dismissal of bankruptcy appeal because before dismissing under Federal Rule of Bankruptcy Procedure 8001, a district court must, inter alia, give the appellant notice of the potential dismissal and consider whether a lesser sanction would be appropriate); Nagy v. Dwyer, 507 F.3d 161, 164 (2d Cir. 2007) (holding that "Rule 4(m) [of the Federal Rules of Civil Procedure] requires that the district court provide notice to a plaintiff before dismissing an action sua sponte for failure to timely serve the defendant" (emphasis added)); Digital, Inc. v. MCI Worldcom, Inc., 239 F.3d 187, 189 & n.2 (upholding sua sponte dismissal for lack of subject matter jurisdiction, but cautioning that acting sua sponte without notice "is to be avoided").

11

establish the loss with precision but rather need only make a reasonable estimate of the loss, given the information available." Id. (internal quotation marks and citation omitted).

Further, the Court, in its June Order, granted forfeiture "insofar as the Court finds that at least a portion of both Mr. Brooks' and Ms. Hatfield's alleged insider trading proceeds are forfeitable." 2011 WL 2446430, at *24. That conclusion has not changed, and the Court indeed overlooked this important fact when analyzing the First Supplemental Report. Some forfeiture of the insider trading proceeds is warranted and supported by the record.

Therefore, the Court GRANTS reconsideration of the September Order to the extent that it denied forfeiture of the alleged insider trading proceeds. However, rather than entertain additional briefing at this time, the Court will conduct a hearing to address the sufficiency and reliability of Professor Harris' Second Supplemental Report, which purports to address all of the Court's concerns expressed in the June and September Orders. Professor Harris will be subject to cross examination by the Defendants, and Defendants, if they wish, may call their own experts to refute the figures proposed in the Second Supplemental Report.

## CONCLUSION

For the foregoing reasons, the Government's motion for reconsideration (Docket Entry 1494) is GRANTED. The parties are directed to report for a hearing on Monday, December 5, 2011 at 9:30 A.M. in Courtroom 1030 before the undersigned to address the merits of Professor Harris' Second Supplemental Report.

SO ORDERED.

/s/ JOANNA SEYBERT\
Joanna Seybert, U.S.D.J.

Dated: November __22__, 2011
        Central Islip, New York