UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X
UNITED STATES OF AMERICA,

       -against-                      <u>MEMORANDUM & ORDER</u>
                                         06-CR-0550(JS)(AKT)

SANDRA HATFIELD and DAVID H. BROOKS,

                       Defendants.
----------------------------------------X
APPEARANCES
For the Government: James Halleron Knapp, Esq.
                  Mary M. Dickman, Esq.
                  Richard Thomas Lunger, Jr., Esq.
                  Christopher Charles Caffarone, Esq.
                  Christopher Allen Ott, Esq.
                  James M. Miskiewicz, Esq.
                  Kathleen Anne Nandan, Esq.
                  Marshall L. Miller, Esq.
                  United States Attorney's Office
                  Eastern District of New York
                  610 Federal Plaza
                  Central Islip, NY 11722

For Ms. Hatfield:   Maurice H. Sercarz, Esq.
                  Roland G. Riopelle, Esq.
                  Sercarz & Riopelle LLP
                  152 West 57th St., 24th Floor
                  New York, NY 10019

                  W. Thomas Dillard, Esq.
                  Ritchie, Dillard & Davies, P.C.
                  606 W. Main Street, Suite 300
                  Knoxville, TN 37902

For Mr. Brooks:    Kenneth Ravenell, Esq.
                  The Murphy Firm
                  One South Street, 23rd Floor
                  Baltimore, MD 21202

                  Roger V. Archibald, Esq.
                  16 Court Street, Suite 2400
                  Brooklyn, NY 11241

                  Alan M. Dershowitz, Esq.
                  Harvard Law School

1575 Massachusetts Avenue
Cambridge, MA 02138

David M. Goldstein, Esq.
David M. Goldstein, P.A.
286 NE 39th Street
Miami, FL 33137

David B. Smith, Esq.
Smith & Zimmerman PLLC
108 North Alfred Street
Alexandria, VA 22314

George Stavropoulos, Esq.
The Law Office of George Stavropoulos, PLLC
120 Bay Ridge Avenue, Suite 210
Brooklyn, NY 11220

Gerald L. Shargel, Esq.
Law Office of Gerald Shargel
570 Lexington Avenue
New York, NY 10022

Gustave H. Newman, Esq.
Richard A. Greenberg, Esq.
Steven Y. Yurowitz, Esq.
Newman & Greenberg
950 Third Avenue, 32nd Floor
New York, NY 10022

Ira Lee Sorkin, Esq.
Lowenstein Sandler PC
1251 Avenue of the Americas
New York, NY 10020

James M. LaRossa, Esq.
200 East 64th Street, Apt 14D
New York, NY 10065

Jeffrey H. Lichtman, Esq.
Law Offices of Jeffrey Lichtman
750 Lexington Ave, 15th Floor
New York, NY 10022

John C. Meringolo, Esq.
Meringolo and Associates, P.C.

2

                    375 Greenwich Street, 7th Floor
                    New York, NY 10013

                    Laurence S. Shtasel, Esq.
                    Blank Rome LLP
                    The Chrysler Building, One Logan Square
                    Philadelphia, PA 19103

                    Mauro Michael Wolfe, Esq.
                    Duane Morris LLP
                    1540 Broadway
                    New York, NY 10036

                    Nathan Z. Dershowitz, Esq.
                    Victoria B. Eiger, Esq.
                    Dershowitz, Eiger & Adelson, P.C.
                    220 Fifth Avenue, Suite 300
                    New York, NY 10001

                    Zaki I. Tamir, Esq.
                    Gofer Tamir and Associates
                    55 Broad Street, 26th Floor
                    New York, NY 10004

SEYBERT, District Judge:

        This Memorandum and Order addresses the motions filed
by Defendants David H. Brooks and Sandra Hatfield (together,
"Defendants") (Docket Entries 1598, 1599)[1] seeking: (1) the
release of grand jury minutes and other discovery, (2) an
evidentiary hearing, (3) dismissal of all charges with
prejudice, and/or (4) a new trial. For the following reasons,
their motions are DENIED in their entirety.

---

[1] Brooks filed a formal motion (Docket Entry 1598), which
Hatfield joined via letter motion (Docket Entry 1599). Thus,
although Hatfield did not explicitly make many of the arguments
discussed herein in her brief letter, the Court will apply all
arguments raised by Brooks to both Defendants.

BACKGROUND

The Court assumes familiarity with the factual and procedural background in this case and will only briefly discuss the facts pertinent to the pending motions.   On April 5, 2006, the United States Attorney's Office for the Eastern District of New York empaneled a grand jury (the "First Grand Jury") to convene beginning on or around April 26, 2006.   On August 16, 2006, the First Grand Jury returned an Indictment against Defendant Hatfield and Dawn Schlegel charging them with securities fraud, conspiracy to commit securities fraud, and insider trading.   (Docket Entry 1.)   On October 24, 2007, eighteen months and nineteen days after the First Grand Jury was empaneled and thus nineteen days after its term expired, the First Grand Jury returned a Superseding Indictment ("S-1") against Defendants Brooks and Hatfield, charging them with conspiracy to commit securities fraud, securities fraud, conspiracy to commit mail and wire fraud, mail fraud, wire fraud, insider trading, conspiracy to obstruct justice, obstruction of justice, material misstatements to auditors (Brooks only), conspiracy to impair, impede, obstruct, and defeat the Internal Revenue Service, false filing (Brooks only), and tax evasion (Hatfield only).   (Docket Entry 51.)   The First Grand Jury was discharged effective that date.

4

On July 9, 2009, a different grand jury (the "Second Grand Jury") returned a Second Superseding Indictment ("S-2") against Brooks, Hatfield, and Patricia Lennex. (Docket Entry 438.) S-2 was substantially similar to S-1, except that it added Ms. Lennex to the count charging Brooks and Hatfield with conspiring to defraud the Internal Revenue Service.

Brooks and Hatfield went to trial on the securities fraud, mail fraud, wire fraud, insider trading, and obstruction of justice-related counts of S-2, and on September 14, 2010, a jury rendered a guilty verdict against Brooks on all counts and against Hatfield on all counts except the substantive mail and wire fraud counts. (Docket Entry 1336.) On August 10, 2011, Brooks pled guilty to the remaining tax-related counts (Docket Entry 1471), and, on September 26, 2011, Hatfield pled guilty to tax evasion (Docket Entry 1490).

On August 15, 2012, Brooks filed a motion to compel the production of the court order extending the term of the First Grand Jury. (Docket Entry 1574.) The Court, after confirming with the Clerk of the Court that no order extending the term of the First Grand Jury was ever issued, denied Brooks' motion as moot. (Docket Entry 1580.) The Court noted that although S-1 was a nullity (see Mem. & Order, Docket Entry 1580, at 4 ("An indictment handed down by a grand jury 'whose life has terminated' is a 'nullity' and must be vacated." (quoting United

5

<u>States v. Macklin</u>, 523 F.2d 193, 195 (2d Cir. 1975)), "this jurisdictional defect was cured when the Second Grand Jury handed down the valid [S-2]" (<u>id.</u> at 5).

Defendants now argue that the nullity of S-1 "compels an examination of whether S-2 was invalid too" (Brooks Mot., Docket Entry 1598, at 8) and "raises serious questions about the validity and fairness of these proceedings, regardless of the validity of S-2" (<u>id.</u> at 24). They seek an order releasing to Defendants the minutes of the proceedings before both the First and Second Grand Juries, an evidentiary hearing, and the dismissal of all charges against them and/or a new trial.

<u>DISCUSSION</u>

The Court will first discuss Defendants' request to release the minutes from the grand jury proceedings before turning to Defendants' arguments regarding the validity of S-2 and the proceedings as a whole.

I.   <u>Releasing the Grand Jury Minutes</u>

Rule 6(e) of the Federal Rules of Criminal Procedure, which governs the disclosure of grand jury minutes, provides in relevant part as follows:

> The court may authorize disclosure--at a
> time, in a manner, and subject to any other
> conditions that it directs--of a grand-jury
> matter . . . at the request of a defendant
> who shows that a ground may exist to dismiss
> the indictment because of a matter that
> occurred before the grand jury.

FED. R. CRIM. P. 6(e)(3)(E)(ii).  The burden is on the party seeking disclosure to make a "strong showing of particularized need for grand jury materials before any disclosure will be permitted." United States v. Sells Eng'g, Inc., 463 U.S. 418, 443, 103 S. Ct. 3133, 77 L. Ed. 2d 743 (1983); see also United States v. Procter & Gamble Co., 356 U.S. 677, 682, 78 S. Ct. 983, 2 L. Ed. 2d 1077 (1958) ("This indispensable secrecy of grand jury proceedings must not be broken except where there is a compelling necessity.  There are instances when that need will outweigh the countervailing policy.  But they must be shown with particularity." (internal quotation marks and citation omitted)).  The Court is "infused with substantial discretion" in determining whether the particularized need asserted outweighs the importance of the secrecy of grand jury proceedings.  Douglas Oil Co. of Cal. v. Petrol Stops Nw., 441 U.S. 211, 223, 99 S. Ct. 1667, 60 L. Ed. 2d 156 (1979).

Defendants appear to make three arguments in favor of disclosure: (1) "the interest in secrecy--and the showing the defendant must make to overcome it--are . . . at their lowest" because there are "no ongoing grand jury proceedings" (Brooks Reply, Docket Entry 1614, at 8), (2) "there was bad faith misconduct before the second grand jury"--namely, "the second grand jury did not consider evidence about Brooks and/or was

invited to rely upon the invalid S-1" (id.), and (3) "the government continues to act in bad faith" by opposing Brooks' motion to compel production of what we now know was a non-existent order extending the term of the First Grand Jury and by opposing Brooks' current "efforts to ascertain what did occur before the second grand jury" (id.). The Court finds that these reasons are insufficient to outweigh the need for continued secrecy of the grand jury proceedings.

First, even though, "[a]s the considerations justifying secrecy become less relevant, a party asserting a need for grand jury transcripts will have a lesser burden in showing justification," Douglas Oil, 441 U.S. at 223, "the interests in grand jury secrecy . . . are not eliminated merely because the grand jury has ended its activities," id. at 222. Thus, "even after the grand jury has completed its deliberations and returned an indictment, the requirement of showing a particularized necessity remains." United States v. Barret, 824 F. Supp. 2d 419, 447 n.23 (E.D.N.Y. 2011); see also United States v. Sobotka, 623 F.2d 764, 768 (2d Cir. 1980) (overturning an order of the district court compelling production of grand jury minutes as an abuse of discretion because, even though the grand jury completed its term, "there was no showing of particularized need").

8

Second, "[a] review of grand jury minutes is rarely permitted without specific factual allegations of government misconduct . . . with respect to the grand jury proceedings." United States v. Torres, 901 F.2d 205, 233 (2d Cir. 1990), overruled on other grounds as recognized by United States v. Marcus, 628 F.3d 36 (2d Cir. 2010); see also United States v. Leung, 40 F.3d 577, 582 (2d Cir. 1994) ("A review of grand jury minutes should not be permitted without concrete allegations of Government misconduct.") Here, however, Defendants' allegations of Government misconduct before the Second Grand Jury are based on speculation and unfounded assumptions.[2]  (See, e.g., Brooks

---

[2] As Defendants allude to in their motion papers (Brooks Mot. 8 n.7), this is not the first time that Brooks has accused the Government of misconduct (see Docket Entry 537).  However, these prior allegations were investigated and found to be entirely without merit.  (See Docket Entries 543, 577.)  Further, Appendix 1 to the forensic psychiatric evaluation of Brooks prepared by Park Dietz, M.D., M.P.H., Ph.D., (Docket Entry 1438) submitted in support of Brooks' prior motion related to his competency to stand trial (Docket Entry 1436), details Brooks' other conspiracy theories involving the Government, the Court, and his own lawyers (Docket Entry 1438, App'x 1 at 41-48).  Dr. Dietz attributed these theories to one of Brooks' "spiritual advisors" and used them to support his diagnosis that Brooks was suffering from "paranoid delusions, including both persecutory and grandiose delusions."  (Dietz Report, Docket Entry 1437, at 145-153; id. at 113-117 (describing Brooks as suffering from paranoid personality disorder).)  So, not only are the allegations of Government misconduct in the present motion unsubstantiated, there is evidence in the record to suggest that they are fantastical.

The Court must note that the relevant docket entries are under seal and, thus, are not available to the parties.  The Court has

Mot. 9 n.8 ("We are not aware whether the evidence used to indict Brooks was presented to a valid or invalid grand jury. The minutes, which we have requested, will show that.").) Courts regularly deny motions to release grand jury minutes that are based on conjecture rather than fact.  See, e.g., Barret, 824 F. Supp. 2d at 447 (denying motion to review grand jury transcripts because the defendant had "not allege[d] a single non-speculative impropriety to support his request"); United States v. Basciano, 763 F. Supp. 2d 303, 316 (E.D.N.Y. 2011) (denying motion to review grand jury minutes because the defendant's allegations of government misconduct were "based entirely on speculation rather than fact").  Defendants brief is nothing more than a list of hypothetical scenarios based on speculations of what the Government may or may not have known and what may or may not have been presented to the grand juries.

Finally, Defendants' argument that the Government's current efforts to maintain the secrecy of the grand jury minutes is evidence of bad faith is nothing more than an attempt to shift the burden to the Government to prove the lack of prosecutorial misconduct.  (See, e.g., Brooks Reply 6 ("Notably, although it repeatedly refers to defendant's claims as 'speculative' or based on 'conjecture' or 'innuendo,' the

---

included the citations in this footnote for its own reference and use.

government nowhere states that it did present evidence to the second grand jury about Brooks and his alleged crimes; it does not say what the prosecutors told the grand jurors about S-1 or the prior grand jury. It is silent about these subjects, even though that information is, at this point, within its exclusive control . . . . It should be presumed therefore that, as before, the government is hiding facts that would be unhelpful to its case."); id. at 6-7 (arguing that the Court cannot accept the Government's "conclusory" contention that S-2 was valid "without offering defendant an opportunity to challenge it with facts").) This is impermissible. Grand jury proceedings "ought not be viewed as a fertile ground to be combed for evidentiary or other error." United States v. Bari, 750 F.2d 1169, 1176 (2d Cir. 1984).

Accordingly, Defendants' motion to release the minutes from the First and Second Grand Juries' proceedings is DENIED.

II.  Validity of S-2

Defendants further assert that the nullity of S-1 compels an examination of the validity of S-2 and argue that S-2 must be dismissed due to Government misconduct before the Second Grand Jury. The Court disagrees.

Rule 12(b)(3) of the Federal Rules of Criminal Procedure provides that motions alleging a non-jurisdictional defect in the institution of a proceeding or in an indictment

11

must be raised before trial. FED. R. CRIM. P. 12(b)(3)(A)-(B). Thus, Defendants' failure to raise this alleged, non-jurisdictional defect in S-2 prior to trial constitutes a waiver of this argument. See United States v. Blitz, 533 F.2d 1329, 1344 (2d Cir. 1976) (finding that the defendants waived their claim that a superseding indictment was invalid because "a government attorney improperly took the witness stand and read to the second grand jury testimony from the first grand jury proceedings[] and . . . some of the testimony read to the second grand jury was incompetent because it has been presented to the first grand jury after the expiration of its term" because they failed to raise it before trial). And although the Court may grant relief from the waiver for "good cause shown," FED. R. CRIM. P. 12(e), Defendants have made no such showing here,[3] cf. United States v. Mangieri, 694 F.2d 1270, 1283 (D.C. Cir. 1982) ("[G]iven the intricacies of trial scheduling and crowded dockets, and the desirability of deciding questions of government misconduct not relevant to the issue of guilt prior to trial, courts are understandably reluctant to grant relief

---

[3] In fact, Defendants have offered no reason for their delayed filing, and there is no indication that they could not have discovered the alleged defects prior to trial through due diligence. That Brooks recently obtained new counsel does not compel a different result. See, e.g., United States v. DeLuna, 616 F. Supp. 534, 538 (D. Mo. 1985) (citing United States v. Johnson, 614 F.2d 622, 623 (9th Cir. 1980)).

except in unusually meritorious cases for untimely motions under Rule 12[(e)].").

Defendants' argument is otherwise entirely without merit. Defendants essentially argue that S-2 is invalid because the Government may not have offered the Second Grand Jury any substantive evidence but instead relied upon copies or summaries of the testimony presented to the First Grand Jury (or worse upon the First Grand Jury's probable cause finding). However, grand jury proceedings carry a "presumption of regularity," United States v. Mechanik, 475 U.S. 66, 75, 106 S. Ct. 938, 89 L. Ed. 2d 50 (1986), and an indictment, valid on its face, cannot be challenged "on the ground that it is based on inadequate or incompetent evidence," United States v. Contreras, 776 F.2d 51, 54 (2d Cir. 1985), see also Costello v. United States, 350 U.S. 359, 363-64, 76 S. Ct. 406, 100 L. Ed. 397 (1956) ("It would run counter to the whole history of the grand jury institution" to permit an indictment to be challenged "on the ground that there was inadequate or incompetent evidence before the grand jury."); Bank of Nova Scotia v. United States, 487 U.S. 250, 261, 108 S. Ct. 2369, 101 L. Ed. 2d 228 (1988) (holding that an indictment valid on its face is not subject to a challenge based on the reliability or competence of the evidence presented to the grand jury); United States v. Williams, 504 U.S. 36, 54-55, 112 S. Ct. 1735, 118 L. Ed. 2d 352

(1992) ("Review of facially valid indictments on such grounds would run counter to the whole history of the grand jury institution[,] [and] [n]either justice nor the concept of a fair trial requires [it]." (alterations in original) (internal quotation marks and citation omitted)).

Further, Defendants allegations of Government misconduct are unsubstantiated and illogical. First, to the extent that Defendants argue that the Government only presented the Second Grand Jury with summaries or transcripts of the testimony before the First Grand Jury with respect to the charges against Hatfield and Brooks, this does not warrant dismissal of S-2. See United States v. Ruggiero, 934 F.2d 440, 447 (2d Cir. 1991) ("It is entirely permissible for the government to use hearsay evidence in its presentation to the grand jury."); Bank of Nova Scotia, 487 U.S. at 261 ("[T]he mere fact that evidence itself is unreliable is not sufficient to require a dismissal of the indictment."); see also Blitz, 533 F.2d at 1344 (finding a motion to dismiss an indictment on the grounds that "some of the testimony read to the second grand jury had been received by the first grand jury after the expiration of its term" was without merit). Second, to the extent that Defendants argue that the Government completely disregarded its burden and failed to present any evidence of Defendants' crimes to the Second Grand Jury, such allegations

14

are baseless and speculative. See supra note 2. The presumption of regularity in grand jury proceedings "may be dispelled only upon particularized proof of irregularities in the grand jury process." Mechanik, 475 U.S. at 75; cf. United States v. Brown, 602 F.2d 1073, 1077 (2d Cir. 1979) ("We have approved th[e] extreme sanction [of dismissal of the indictment] only when the pattern of misconduct is widespread or continuous." (internal quotation marks and citation omitted)).

Accordingly, Defendants have failed to establish the invalidity of S-2, and to the extent the pending motion seeks dismissal of S-2 on those grounds, the motion is DENIED.

III. Miscellaneous Issues

Defendants also argue that, even if S-2 is valid, the invalidity of S-1 violated their constitutional right "not to be held for an extended period without a valid indictment or a valid waiver of one." (Brooks Mot. 24.)  Specifically, Defendants argue that their speedy trial rights were violated, that substantial portions of the Government's case are time-barred, and that they were otherwise prejudiced by the nullity of S-1. The Court will address each argument in turn.

A.   Speedy Trial Act

The Court will address Brooks and Hatfield's speedy trial claims separately.

15

    1.  <u>Brooks</u>

Brooks argues that his speedy trial rights were violated because he "was not actually indicted until S-2 issued, nearly 21 months after his arrest." (Brooks Mot. 25.) The Court disagrees. Although the Speedy Trial Act provides that an "indictment charging an individual with the commission of an offense shall be filed within thirty days from the date on which such individual was arrested," 18 U.S.C. § 3161(b), "an indictment returned by a grand jury whose term has expired is sufficient to toll Speedy Trial Act § 3161(b) if it is followed by a valid indictment, identical in all material respects," <u>United States v. Rabb</u>, 680 F.2d 294, 297 (3d Cir. 1982); <u>accord</u> <u>United States v. Perez</u>, 845 F.2d 100, 102-03 (5th Cir. 1988); <u>see also</u> <u>United States v. Berry</u>, 90 F.3d 148, 151 (6th Cir. 1996) ("The purpose of the thirty-day rule is to ensure that the defendant is not held under an arrest warrant for an excessive period without receiving formal notice of the charge against which he must prepare to defendant himself."). Brooks concedes that S-2 was identical to S-1 in all material respects (Brooks Mot. 16 ("Except for minor stylistic changes, S-2 differed from S-1 only by the addition of Lennex to Count 18, one of the tax counts."), thus he suffered no prejudice, <u>see</u> <u>Berry</u>, 90 F.3d at 151 ("[B]ecause the original indictment put the defendant on notice as to what charges he would confront at trial, he is not

16

prejudiced by the original indictment's tolling of the thirty-day period."). And, as the Court concluded above, there is no evidence of Government misconduct or bad faith. Accordingly, Brooks' speedy trial rights were not violated.

       2.  <u>Hatfield</u>

      Hatfield argues that "because the S-1 indictment was a nullity, the Court's orders granting the government's applications for exclusion of time from speedy trial calculation under the Speedy Trial Act (18 U.S.C. § 3161) in connection with the S-1 indictment were equally a nullity," and that "Hatfield's speedy trial rights were violated by the delay of her trial for 20 plus months while the S-1 indictment was pending." (Hatfield Mot. 3.) The Court disagrees. The Speedy Trial Act provides that the "[f]ailure of the defendant to move for dismissal prior to trial . . . shall constitute a waiver of the right to dismissal under this section." 18 U.S.C. § 3162(a)(2); <u>see</u> <u>also</u> <u>United States v. Abad</u>, 514 F.3d 271, 273-74 (2d Cir. 2008). As Hatfield failed to raise her speedy trial claims prior to trial, she has waived them.

    B.  <u>Statute of Limitations</u>

      Defendants further argue that S-1's nullity creates statute of limitations issues. The Court disagrees. Defendants waived any statute of limitations defenses by failing to raise them prior to trial. <u>See</u> <u>United States v. Cote</u>, 544 F.3d 88,

103-04 (2d Cir. 2008); United States v. Walsh, 700 F.2d 846, 855 (2d Cir. 1983); see also supra pages 11-13.  Even if Defendants did not waive their purported statute of limitations defenses, their argument is otherwise without merit.  "Once an indictment is brought, the statute of limitations is tolled as to the charges contained in that indictment," and "[t]he statute begins to run again . . . only if the indictment is dismissed." United States v. Grady, 544 F.2d 598, 601 (2d Cir. 1976).  If an indictment is dismissed "for any reason," including a lack of jurisdiction, 18 U.S.C. § 3288 provides the Government with a six-month grace period to reindict.  See United States v. Macklin, 535 F.2d 191, 193 (2d Cir. 1976).  Here, however, S-1 was never dismissed but was instead superseded by S-2; therefore, Section 3288 is inapplicable.  Nonetheless, the statute of limitations was tolled by the filing of S-1, see United States v. Drucker, 453 F. Supp. 741, 743 (S.D.N.Y.) (finding that a defective indictment tolled the statute of limitations), aff'd, 591 F.2d 1332 (2d Cir. 1978); United States v. Smith, 197 F.3d 225, 228-29 (6th Cir. 1999) (similar), and S-1 was still pending when S-2 was filed.  Accordingly, S-2 is timely, and Defendants' motion to dismiss S-2 as time-barred is DENIED.[4]

---

[4] A contrary conclusion would elevate form over substance.  See Smith, 197 F.3d at 228-29 (explaining that the tolling rule

C.   <u>Prejudice</u>

Finally, Defendants argue that the convictions must be set aside "unless the Government can establish beyond a reasonable doubt that the proceedings that occurred in the period during which the Court lacked jurisdiction did not prejudice the Defendant[s]." (Brooks Mot. 29.)  The Court disagrees.  Assuming, <u>arguendo</u>, that S-1's nullity violated Defendants' Fifth Amendment right to indictment by a grand jury, Defendants have suffered no prejudice.  A defendant is prejudiced and "dismissal of the indictment is appropriate only 'if it is established that the violation substantially influenced the grand jury's decision to indict,' or if there is 'grave doubt' that the decision to indict was free from the substantial influence of such violations." <u>Bank of Nova Scotia</u>, 487 U.S. at 256 (quoting <u>Mechanik</u>, 475 U.S. at 78); <u>see also</u> <u>United States v. Nkansah</u>, 699 F.3d 743, 752 (2d Cir. 2012) (a conviction will not be reversed and an indictment dismissed unless the defendant makes "a clear showing of substantial prejudice to the accused--such as a showing that the indictment is so obviously defective that by no reasonable construction can

---

articulated in <u>Grady</u> is "unrelated to the issue of whether an indictment is defective or insufficient," because "[i]f this were not the case, then the United States would simply dismiss the original indictment and refile under the savings clause of 18 U.S.C. § 3288").

it be said to charge the offense for which conviction was had"
(quoting <u>United States v. Wydermyer</u>, 51 F.3d 319, 325 (2d Cir.
1995) (internal quotation marks omitted)).[5]  Here, any possible
prejudice to Defendants was rendered harmless by the jury's
guilty verdict.  <u>See, e.g.</u>, <u>Ruggiero</u>, 934 F.2d at 448 (finding
that "any possibility of prejudice was eliminated by the petit
jury's conviction").  Accordingly, Defendants' motion to dismiss
and/or for a new trial on the grounds that they were prejudiced
by the nullity of S-1 is DENIED.

CONCLUSION

For the foregoing reasons, Defendants' motions to
unseal the Grand Jury minutes, for an evidentiary hearing, to
dismiss all charges against them and/or for a new trial (Docket
Entries 1598, 1599) are DENIED.


SO ORDERED.

/s/ JOANNA SEYBERT_____
Joanna Seybert, U.S.D.J.

Dated:    June 6, 2013
          Central Islip, NY

---

[5] Contrary to Brooks' allegations, prejudice does not mean <u>any</u>
"adverse effect" suffered by a defendant but is instead limited
to errors that adversely affected the outcome of the trial.  <u>See</u>
<u>Mechanik</u>, 475 U.S. at 72.